## Joe Dudley v. The State.

### No. 1815. Decided December 7, 1898.

**1. Continuance.**

A continuance will not be granted except for witnesses who are shown to be material by facts set out in the application. And where proposed absent witnesses appeared and testified on the trial, the application for continuance as to them will be held to have been properly overruled.

**2. Assault With Intent to Murder—Improper Argument or Statement of Counsel—Withdrawal by Court.**

On a trial for assault to murder, an attorney for the prosecution in his argument stated as a fact an important matter not proved in evidence. Upon objection by defendant, the court promptly rebuked him and instructed the jury that the same was improper and was not to be considered by them, and also charged them to the same effect. Held, under such circumstances such unwarranted and improper statements will not constitute error unless injury is shown to have resulted.

**3. Withdrawal of Evidence by the Court—Practice.**

Where improper evidence has been introduced, usually the proper practice is to move to have it excluded, and the same will not be cause for reversal where this has been done, and the jury instructed to disregard it. But, notwithstanding this has been done, if the evidence was of a character so prejudicial as to influence the defendant's case, and thereby prevent a fair and impartial trial, it will constitute reversible error.

**4. Bill of Exceptions to Admitted Evidence.**

A bill of exceptions to admitted evidence, to be sufficient, must state the facts and also defendant's objections to the introduction of said testimony.

**5. Assault to Murder—Evidence—Contemporaneous Difficulties.**

On a trial for assault with intent to murder, evidence of a contemporaneous difficulty between third parties being part and parcel of the same transaction is admissible.

**6. Exception to Charge.**

An exception "generally to the charge of the court" will not be considered, because too general, and points out no assumed defect in the charge.

**7. Self-Defense—Omission to Charge.**

On a trial for assault with intent to murder, where the court proposed to submit the issue of self-defense, but did not do so because defendant requested that it should not be submitted, that he would stand upon his theory of his testimony which excluded him from participation at all in the difficulty; Held, if any wrong was done by the omission to charge self-defense, defendant was responsible for it, and can not complain either on motion for new trial or on appeal.

**8. Assault With Intent to Murder—Evidence.**

See facts summarized in the opinion for evidence sufficient to support a judgment of conviction for assault with intent to murder.

APPEAL from the District Court of Brazoria. Tried below before Hon. T. S. REESE.

Appeal from a conviction for assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder one Frank Ruby, on the 28th day of March, 1897.

Frank Ruby testified: That on the Sunday evening of the assault he and his brother, March Ruby (who was subsequently killed in the difficulty), walked with Clem Elliott and his wife and Lottie Dudley, wife of defendant, down to the bars of the fence between the places of March Ruby and defendant, Joe Dudley. He said: "We saw Lewis Joseph, Joe Dudley (the defendant), Louis King, and Sam Dudley. They were coming around some briar bushes; Lewis Joseph was ahead; he had a Winchester gun in his hand; they were coming towards us when we first saw them. When we got to the bars they were on the other side. Joe Dudley let the bars down and the women passed through. He, Joe, let down the middle bars and left the top bars up. March stooped down and passed under the bars and spoke, saying, 'How do you gentlemen feel?' They all spoke but Louis Joseph. March said to Louis Joseph, 'Let me have a word with you?' Louis said, 'I don't want to have any talk with you; you have not treated me right; you have intruded on me.' March said, 'Oh, well, all I wanted to say was, I heard that you had been saying, and had it around, that I had been trying to hoodoo you, and I don't like that sort of talk.' Louis Joseph then said, 'If you heard I said anything about you, I want you to understand I said it, and am man enough to say it now.' March said, 'Man, you are hard to get along with. I do not want any trouble with you.' Up to this time Louis Joseph had had his Winchester in his hand down by his side; he now threw it up and presented it towards March. I, seeing this and believing there was going to be trouble, called to March to come back and let's go home. I started, backing off. Then Joe Dudley, the defendant, called out, 'Come back here; let's don't let any of them get away. Kill the whole outfit.' He was standing by the bars. He, Joe Dudley, drew a pistol and leaned over the bars, and fired the first shot, which struck me in the side. [Here witness showed the jury the wound upon his body.] I started off and he fired four times more at me and struck me again in the leg. I was going off, looking back. Louis Joseph then fired at my brother, March, who was turning away from him, and struck him in the right side. March then ran about twenty-two steps, when Louis shot him in the back. March fell on his face with his hands spread out. The first shot struck March in the side, ranged back; the second shot struck him in the back and came out in front. March was turning away from Louis when Louis fired first. Louis Joseph then fired one shot at me, as I was going off, and hit me in the leg."

Cross by defendant: "I was backing off from them when the defendant fired the first shot at me. Eight shots were fired in all. Joe Dudley fired five, and Louis Joseph three. March Ruby was not armed; he had

no coat on, and was smoking his pipe. He had the pipe in his left hand when he was talking to Louis Joseph. March Ruby had no arms of any kind at the time he was killed. I had none. It was dry and dusty, and we were examining the cotton to see if it would come up. Joe Dudley's wife came along with us down to the bars."

This testimony is corroborated in all material respects by the testimony of the other State witnesses.

Defendant's testimony and that of his witnesses was to the effect that the difficulty originated, as stated by Frank Ruby above, but that March Ruby was advancing upon Louis Joseph with his hand in his pocket, and that he suddenly attempted to draw his hand out, when Louis threw up his gun and fired squarely in front of March's breast. That March whirled round, when Louis fired again, striking him in the back and he fell on his face. That Frank Ruby then ran forward to the bars and drew his pistol, when Louis fired his third shot at him, and he, Frank Ruby, turned and ran off, and Louis fired two more shots at him as he ran.

They all testified that Joe Dudley, the defendant, did not fire a shot. The defendant himself testified: "I did not shoot at Frank with a pistol and hit him in the side. I had no pistol. Louis Joseph did all the shooting. I did none of it."

The opinion states fully all matters connected with the questions it discusses, and no further statement is needed in relation thereto.

*A. E. Masterson* and *Duff & Duff,* for appellant. [No brief for appellant found with the record.—Reporter.]

*Mann Trice,* Assistant Attorney-General, for the State.—1. No error is shown in overruling the motion for a continuance, as attachments were issued, and both of the witnesses brought in and testified in the case.

2. The statement made by the assistant prosecuting attorney in regard to Louis Joseph having been tried and convicted for the murder of March Ruby, was promptly rebuked by the court and the jury told to disregard the same. Again, the court in its written charge told the jury that there was no evidence to that effect before them, and not to regard the statement of counsel for any purpose.

3. The killing of March Ruby was so connected with this transaction that it formed a part of it, and it was impossible to separate them. The evidence showed that appellant and Louis Joseph acted in concert with each other. That while Louis Joseph was engaged in the difficulty with March Ruby, that Frank Ruby, the injured party in this transaction, started to leave the scene of the difficulty, when appellant said, speaking to Frank Ruby, "Come back here; don't let any of them get away; kill the whole outfit," and then drew his pistol and began to fire at Frank Ruby,—showing that appellant and Louis Joseph were acting in concert

in their assault upon the two Rubys, and rendered admissible testimony as to the entire difficulty between appellant and Joseph on one side and the two Rubys on the other.

4. The facts in evidence did not call for or require a charge on self-defense. The entire evidence for the State shows that Frank Ruby was unarmed; that he made no demonstration whatever toward appellant or Louis Joseph; that he was attempting to retreat and get his brother, who was killed, to come with him, when appellant fired upon him. The defense relied solely upon the fact that appellant did not do the shooting; that Ruby was shot by Louis Joseph, and that appellant did not have any connection whatever with the difficulty,—no more than that he was present. The testimony for the defense suggested that Frank Ruby was armed with a pistol, and that he advanced upon Louis Joseph. There is not a particle of testimony tending to show that he made any advance or demonstration against appellant whatever. If Louis Joseph had been or trial for assault to murder, this testimony would have called for a charge on self-defense as to him, but in no manner suggested the issue in reference to appellant, as he did not claim that there was any demonstration made toward him at all. But, as said before, he depended solely upon the ground that he was not connected with the difficulty, was unarmed, and did not in fact do the shooting. This view was acquiesced in by counsel for the defendant when he presented his special charge on aggravated assault, embodying the law of self-defense. He withdrew the charge and his request to give it, and can not now be heard to complain. The facts did not call for a charge on self-defense, and no error appears.

DAVIDSON, JUDGE.—Appellant was convicted of an assault with intent to murder Frank Ruby, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

When the case was called for trial, he filed his application for a continuance on account of the absence of Matt Chandler, Andrew Thomas, John Brown, Abe Bryson, Tom Brown, and Bill Davis. In setting out the facts expected to be proved by these absent witnesses, but two of them are mentioned, to wit, Matt Chandler and Abe Bryson. The evidence, if any, expected to be obtained from the others, is not stated. Of course, if they were not shown to be material witnesses, he could not have expected to obtain a continuance for them. As to Matt Chandler and Abe Bryson, it is sufficient answer to the motion to state that they both appeared and testified on the trial; one for the defendant, and the other for the State.

The second bill of exceptions recites that T. C. Rowe, who was assisting the district attorney in this prosecution as counsel for the State, "imparted to the jury information which had been sedulously guarded against by defendant's counsel as a matter of evidence, and which had not been shown as a matter of evidence, to wit, that Louis Joseph, a co-defendant with this defendant, had been tried and convicted for the

murder of March Ruby, and was serving out a term in the penitentiary therefor." Defendant excepted. "Defendant further says that, while the court instructed to jury to disregard said statement, it was impossible to repair the injury thus done defendant by acquainting them with said fact." The court explains this bill by stating "that when counsel for the State made the remark above referred to he was promptly and emphatically rebuked by the court, and the jury were instructed that the same was improper, and not to be weighed or considered by them; and were also instructed by the court, in the charge of the court, to the same effect." Remarks of this character should be carefully avoided by counsel during a trial, either in their argument, or at any other stage of the proceeding. As a general rule, objectionable remarks of prosecuting counsel, if promptly withdrawn by the court, and the jury properly instructed to disregard and not consider the same, will not constitute error, unless injury is shown to have resulted. King v. State, 32 Texas Crim. Rep., 463; Boscow v. State, 33 Texas Crim. Rep., 390. The statement of a matter of fact by counsel in their arguments can not occupy a higher plane before the jury than the introduction of improper evidence. When improper evidence has been admitted, through inadvertence or otherwise, in behalf of the State, even when not objected to in the first instance, it is proper practice on motion to exclude it from the jury, and to instruct them not to consider it; and usually, where it has been excluded, and the jury instructed to disregard the same, it will not be cause cause for reversal. This has been a question of serious trouble in appellate courts, and it is a very difficult matter to lay down a rule under such circumstances. Usually the error is corrected by the court withdrawing the improper evidence from the consideration of the jury. This has been the rule in this State, and seems to be in accord with the weight of the authority. Sutton v. State, 2 Texas Crim. App., 342; Marshall v. State, 5 Texas Crim. App., 273; Phillips v. State, 22 Texas Crim. App., 139; Nalley v. State, 28 Texas Crim. App., 387; Miller v. State, 31 Texas Crim. Rep., 609. We would not be understood as holding that cases may not arise in which the withdrawal of testimony would not cure the error committed in admitting the same. It may occur that evidence so prejudicial in its character may be admitted as to so influence the jury against the defendant that it would deprive him of a fair and impartial trial. If the testimony was of such a prejudicial character as to probably have this effect, we would unhesitatingly reverse the judgment. But we do not believe, under the circumstances of this case, that the statement of the State's counsel was of this character when viewed in the light of the whole record.

The third bill of exceptions recites that "the court admitted, over defendant's objection, testimony relative to a difficulty which occurred between one Louis Joseph and one March Ruby on the day and date charged in the indictment in this case, wherein this defendant is charged with having committed an assault upon Frank Ruby with the intent to murder said Frank Ruby; to which ruling of the court the defendant then

and there excepted," etc. The court, in approving this bill, states that: "The shooting of Frank Ruby, with which defendant is charged, and the killing of March Ruby, with which Louis Joseph was charged, were so connected that it was impossible to separate them in the evidence. The jury, in the charge of the court, was properly instructed as to this." The bill of exceptions reserved by appellant does not state the facts relative to the difficulty between Joseph and March Ruby, nor does it state the grounds of objections of appellant to the introduction of said testimony. The bill itself, then, is too defective to require revision. But in looking to the statement of the judge in approving this bill he puts the matter so that there was no error in admitting it. If Louis Joseph was shooting March Ruby while the defendant was shooting Frank Ruby, and it all occurred at the same time, and was part and parcel of the same transaction, then the testimony in regard to the part that Louis Joseph took in the transaction was res gestae, and therefore admissible; and that seems to have been the view taken of it by the court, both in the explanation to the bill and in the charge to the jury. A reference to the statement of facts would show that it was a part and parcel of the same transaction, and that the parties intended to kill both the Rubys; and that Louis Joseph did in fact kill March Ruby while the defendant was shooting Frank Ruby.

The fourth bill of exceptions recites that the defendant excepted "generally to the charge of the court." This, of course, will not authorize a revision of the charge, for, under the decisions of this court, the exception is too general, and points out no assumed defect in the charge.

Appellant also reserved an exception to the action of the court overruling the motion for a new trial, the sixth ground of which alleges that the court erred in not charging the law of self-defense. In signing the bill of exceptions, in this respect the court explains as follows: "In explanation of the exception to the charge for failure to charge the law of self-defense, I will state that the defendant's counsel presented to the court a written request to charge the law of aggravated assault and self-defense. The court stated to the defendant's counsel that it would be done, and especially that the court would charge the law of self-defense, if defendant requested it. After considering the matter, the defendant's counsel said he would not ask the court to charge the law of self-defense, and erased that portion of the written request to charge, and in fact intimated to the court that he did not wish the law of self-defense to be presented in the charge. The only defense presented was that the defendant did not, in fact, shoot the man Frank Ruby, but that it was done by Louis Joseph." The court gave a charge on aggravated assault and battery. There was testimony introduced by the defendant tending to raise the issue of self-defense, and, but for the request of appellant to the court to pretermit a charge on this subject, his bill of exceptions might have been well taken. But, under the circumstances stated by the court, the defendant preferred to rely upon his evidence, which, if true, excluded the fact that he was engaged in the difficulty at all, and which

showed that he did not shoot Frank Ruby, nor shoot at him, nor in any way participate in the difficulty which resulted in the wounding of Frank Ruby. When the court proposed to submit the issue of self-defense, the defendant withdrew his request, and suggested that it be not submitted; that he would stand upon the theory of his testimony, which excluded him from participating in the difficulty. This was, in fact, his defense. We do not believe that a party can, under such circumstances, take advantage of his own action. But for this action, the court would have submitted his theory of self-defense, and because of his suggestion it was not done. So, if a wrong was done him, he is responsible for it, and can not complain. The statute of 1897 has changed the rule somewhat with reference to the effect of charges in the trial court. The errors in regard to charges must not only be calculated to injure the rights of the defendant, but a bill of exceptions must be reserved at the time, or on motion for new trial. When the matter was presented to the court, the defendant declined to have the issue submitted, thus placing himself without the pale of the rule, as we understand it, by which he can take advantage of the supposed error on appeal, or even on motion for new trial.

The evidence amply supports the judgment. By the statement of facts the evidence for the State discloses a deliberate and willful premeditated attack on March and Frank Ruby; that they were both unarmed when met by Louis Joseph, defendant, and others; that Joseph and appellant were brothers-in-law; that Joseph shot March Ruby twice,—once when he was turning to flee, and the second time through the back, after he had run some twenty or thirty steps. The defendant shot Frank Ruby through the side with a pistol, and either he or Louis Joseph shot him in the leg as he was running away. This is the State's theory of the case. There was some evidence for the defendant tending to show that both the Rubys were armed, and provoked the contest with Louis Joseph, and that defendant shot Frank Ruby after he had drawn his pistol for the purpose of shooting at Louis Joseph. But this was not credited by the jury, and we believe they were correct in not believing it. The judgment is affirmed.

*Affirmed.*