## JOHN (JACK) JOINER v. THE STATE.

No. 10283.   Delivered October 6, 1926.

Rehearing denied November 10, 1926.

### 1.—Murder—Charge of Court—No Error Shown.

Where, on a trial for murder, appellant excepts to the failure of the trial court to charge on the issue of manslaughter, and it appears that before the court had given his charge to the jury he stated to appellant's counsel, that while the court did not believe the evidence raised the issue of manslaughter, the court would give a special charge submitting the issue, if requested by appellant, and after consulting with his client, counsel for appellant stated to the court that appellant did not desire the issue submitted, no error is presented.   Following Dudley v. State, 48 S. W. 179.

### 2.—Same—Argument of Counsel—No Error Shown.

Where remarks of counsel for the state in his argument to the jury are objected to by appellant, and such objection is sustained and the jury instructed by the court to disregard such argument, if such remarks are not of a nature so harmful as to preclude their withdrawal by the court, the rule is that under such conditions this court is not authorized to reverse the case.   Following Sutton v. State, 2 Tex. Crim. App. 346, and other cases collated in Branch's Ann. Tex. P. C., Sec. 382.

#### ON REHEARING.

### 3.—Same—Charge of Court—On Manslaughter—Properly Omitted.

It is well settled that on a trial for murder, a charge on manslaughter is not required, unless the evidence in the case raises that issue.   In the instant case appellant defended solely on the ground that some one other than himself fired the shot that killed the deceased.   There was no testimony from any source that the killing was under circumstances that would reduce it to manslaughter, and there was no error in the failure of the court to submit that issue in his charge.

Appeal from the District Court of Wilbarger County.   Tried below before the Hon. Robert Cole, Judge.

Appeal from a conviction of murder, penalty ninety-nine years in the penitentiary.

The opinion states the case.

*Cook, Cook & Donaghey* of Vernon, *Davenport & Crain* of Wichita Falls, for appellant. On the court's failure to charge on manslaughter, appellant cites:
Green v. State, 58 Tex. Crim. Rep. 428.
William v. State, 61 Tex. Crim. Rep. 361.
Lee v. State, 54 Tex. Crim. Rep. 385.
Miller v. State, 52 Tex. Crim. Rep. 78.
Lewis v. State, 48 Tex. Crim. Rep. 614.

*Storey & Leak,* Special Prosecutors; *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at confinement in the penitentiary for a period of not less than five nor more than ninety-nine years.

Artie Crain was shot and killed. The homicide took place late at night. Antecedent to the firing of the fatal shot, the appellant and his wife, one Ed Turner and the deceased, were at the domicile of the appellant, where they had spent the evening and a portion of the night in eating and drinking, and all apparently had consumed a quantity of intoxicating liquor. A gambling game was suggested and money was put upon the floor by the appellant and Turner. Mrs. Joiner objected to the game. Turner picked up some of the money from the floor and the appellant did likewise. According to Turner, he took none but his own, but according to the appellant, Turner picked up some of the money belonging to Joiner. An altercation took place in which a knife was used. In his testimony, Turner declared that the appellant was the aggressor and the producer of the knife. Appellant took the opposite position. During the altercation the deceased left the house, and following the fight, Turner left it. The appellant and his wife both possessed themselves with guns and came out upon the street.

There was no evidence of ill-feeling between the parties.

According to Turner, at the beginning of the fight between himself and the appellant, Mrs. Joiner and Crain went out of the apartment in which the fight occurred. After taking the knife from Joiner and getting his own hat, Turner left the build-

ing. Upon looking back, he saw appellant and his wife both armed with guns. The appellant at the time was loading his Winchester. The witness stopped after going some distance up the street and looked to ascertain whether he was followed by the appellant and his wife. He there saw them and also saw the appellant shoot Crain, who at that moment was coming across the street. The witness said that Crain did nothing before he was shot, but exclaimed when the fatal shot was fired, "Oh, Jack, you shot me," and after he fell to the ground he said, "Oh, Jack, you have killed me." Appellant did not stop, but walked up the street and said, "Well, I got him," and then remarked, "Run, you cowardly s— of a b—."

According to Mrs. Joiner, after the fight with Turner, the appellant and his wife sat down on a bench in their apartment, and about ten minutes after Turner and Crain had left the building she heard a shot fired. Upon going out she heard someone say, "Oh, my God, I am shot." She went to the person speaking and found that it was Crain. She asked, "Who shot you?" and he replied, "I don't know."

According to the appellant's testimony, at the beginning of the difficulty between himself and Turner, Crain ran out of the house and said to Mrs. Joiner, "Come on, let's get out of here or we are going to get hurt." She ran out but stopped and said she would not leave her husband. After striking the appellant, Turner ran out. Crain had previously gone. After Mrs. Joiner had returned and while they were together in the front part of the building a shot was heard. They each left the building, going in different directions. Upon hearing his wife talking, he went to her and found Crain, who said, "My God, Jack, somebody has shot me," and in reply to a question, he said he did not know who shot him or from what direction the shot came.

There was other testimony to circumstances showing the location of the parties and the building, but a recital of such testimony is not deemed necessary.

The testimony of the appellant and his wife was to the effect that the deceased was a friend of theirs. In their testimony the appellant and his wife said that while in the premises of the appellant and sometime before the homicide, some harsh words had been exchanged between Crain and Turner.

The court submitted the issue of murder. Against the charge the following exception was urged:

"Because the same submits to the jury the only issue as to

defendant's guilt or innocence of murder, when there is not any evidence that defendant is guilty of murder, the only issue presented by the evidence being as to whether he was guilty of manslaughter in killing deceased under the immediate influence of sudden passion arising from adequate cause, and unintentionally."

The main proposition advanced by the exception quoted is that the evidence does not warrant a conviction of murder, and that in authorizing the jury to convict of that offense, the court's charge is wrong; and that the only instruction justified by the facts would permit a conviction of the offense of manslaughter.

The judge stated to counsel for the appellant that he did not think the evidence called for a charge on manslaughter, but that if counsel for accused would embrace the law of manslaughter in a requested special charge, that such special charge would be given to the jury by the court. When this announcement was made, according to the bill of exceptions as qualified, *"the defendant's counsel had a consultation with the defendant for some thirty minutes discussing the special charge and then informed the court that the defendant did not care for the charge on manslaughter."*

As we understand the record, the proceeding mentioned suggests that the accused and his counsel were of the opinion that they should rely solely upon their contention that the court was in error in embracing the law of murder in the charge, and that any demand for a charge on manslaughter implied in the exception to the court's charge quoted above was withdrawn. That conclusion is similar to that announced by this court in an opinion by Judge Davidson in the case of Dudley v. State, 48 S. W. 179, in which there was a withdrawal of the request for a charge on self-defense.

It seems clear that the testimony of the eye-witness, Turner, was such as demanded a charge on the law of murder, and we are not satisfied that the evidence was such as required an instruction on manslaughter, even though one had been requested or demanded by specific exception.

No defensive theory, or mitigating fact, save possibly intoxication, arises from the state's testimony, and the testimony of appellant and his witnesses presents only the theory that the fatal shot was fired by another and not by the appellant.

If the court, of its own motion, had, in addition to the law of murder, instructed on the law of manslaughter, some just ground of complaint might have inured to the accused because

of the submission of an issue conflicting with the appellant's defensive theory and unsupported by the evidence. We are quite clear in our minds that the court was bound to charge on murder, but are not able to say that a charge on manslaughter would have been proper. Be that as it may, the record reveals no error in the failure to charge on the law of manslaughter nor in submitting the law of murder.

Counsel for the state referred to the presence of the father and mother of the deceased sitting in the court room grieving. Objection to this was made and sustained. The court also instructed the jury in writing to disregard the argument. The remarks are not regarded of a nature so harmful as to preclude their withdrawal by the court. The rule that under such conditions the court is not authorized to reverse is well supported by precedents. See Sutton v. State, 2 Tex. Crim. App. 348, and other cases collated in Branch's Ann. Tex. P. C., Sec. 382.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant's motion is based on the refusal of the trial court to submit the issue of manslaughter. We have reviewed the record in the light of the motion and authorities cited. The instant case differs materially from the case of Steen v. State, 225 S. W. 529. In that case the accused admitted the shooting and gave testimony which, along with that of other witnesses, indicated a state of facts upon which a jury may have predicated a finding that the mind of the accused was so aroused by rage, anger, resentment, etc., as to render it incapable of cool reflection, and we held that the issue should have been submitted. In this case, viewed in its most favorable. light to appellant's contention, the evidence showed that prior to the homicide appellant, his wife, deceased and one Turner were together in appellant's place of business until a late hour in the night; that they were eating and drinking, and appeared for a while on friendly terms. That there arose a dispute between appellant and Turner over some money and a knife was drawn. Deceased and the wife of appellant left the room, the wife returning presently. There had been some prior dispute between deceased and appellant. Following the scuffle between appellant and Turner, Turner seems to have gotten the knife and left the premises. He testified that as he was leaving he saw the deceased loading a Winchester, and that after the passage of a short time appellant came out of his house carrying

a gun, accompanied by his wife who was also carrying a gun. They walked down the path and as deceased approached them coming across the street, Turner said appellant shot deceased. A night watchman, who was not very far distant and heard the shot, came to the scene soon after the occurrence and testified that he found deceased on the ground and appellant and his wife were in the vicinity. They each had guns. He gave no testimony as to any evidence of excitement or agitation on the part of appellant or his wife. A witness testified to hearing appellant say after the shooting that he "got him." Appellant and his wife both testified that appellant did not do the shooting, but that at the time it was done they were together in their place of business. We are not led to believe the contention of the appellant is sound.

The motion for rehearing will be overruled.

*Overruled.*