WALSH *et al.* v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION ONE.

1. **Railroad:** SPEED OF TRAIN: EVIDENCE. The speed of moving cars may be shown by the opinion of a witness who saw them in motion.

2. ———: NEGLIGENCE: CAUSE OF INJURY. Where the injury to the deceased was caused by cars jumping from the track and demolishing the house in which he was sleeping, and it appeared that the train was running in violation of the city ordinance, at a speed of fifteen or twenty miles an hour, the jury is warranted in finding that the injury was due to the excessive speed of the train.

3. ———: ———: PERSONAL INJURY. The deceased was seriously bruised by the falling walls and roof, and the physician who attended him testified that there were serious internal injuries in the region of the liver and abdomen. He had been a stout man and lived only a month after the accident. *Held* that the jury was warranted in finding that he died from the injuries received in such accident.

4. ———: ———: PRESUMPTION. Where it appears that the cars were running on defendant's track when wrecked, it will be presumed, in the absence of evidence to the contrary, that they were operated by the defendant.

5. ———: ———: ADMISSION AT THE TRIAL. Where the bill of exceptions recites that at the trial plaintiffs' counsel asserted that the locality which was exempted from the operation of the ordinance

regulating the speed of moving trains was some distance from the place of the accident and this was not denied by defendant's counsel who seemed to acquiesce in the statement, the fact that the accident did not occur in the exempted locality will be taken to have been conceded at the trial.

*Appeal from St. Louis City Circuit Court.*—Hon. Daniel Dillon, Judge.

Affirmed.

*B. Pike* for appellant.

(1) The demurrer to the evidence by defendant should have been sustained, and the refusal thereof was error. *Moore v. Railroad*, 28 Mo. App. 622; *Shertle v. Railroad*, 97 Pa. St. 450; *Railroad v. Strohm*, 96 N. Y. 305; *Curtis v. Railroad*, 18 N. Y. 541; *Filer v. Railroad*, 49 N. Y. 45; *Clark v. Brown*, 18 Wend. 229; *Lincoln v. Railroad*, 23 N. Y. 425, 435; *Williams v. Railroad*, 9 S. W. Rep. 577. (2) The instructions given by the court, at the instance of plaintiffs, and on his own motion, were erroneous. See cases cited under point 1.

*John M. Dickson* for respondents.

The instruction for nonsuit at the close of plaintiffs' case was properly refused, and the case properly submitted to the jury. Wharton's Law of Negligence, secs. 420, 421; *Ireland v. Plankroad Co.*, 3 Kerr, 533; *Condy v. Railroad*, 85 Mo. 85; *Frick v. Railroad*, 75 Mo. 601; *Noeninger v. Vogt*, 88 Mo. 592; *Wilson v. Board of Ed.*, 63 Mo. 140; *Kelly v. Railroad*, 70 Mo. 609; *Buesching v. Gaslight Co.*, 73 Mo. 219; *Donahue v. Railroad*, 91 Mo. 360; *Alexander v. Railroad*, 76 Mo. 494. The non-compliance on the part of a railroad company with statutory regulations in running its trains is *prima facie* evidence of negligence. *Holman v. Railroad*, 62 Mo. 564; *Wallace v. Railroad*, 76 Mo. 82;

*Branton v. Railroad,* 75 Mo. 73 ; *Keller v. Railroad,* 75 Mo. 138 ; *Frick v. Railroad,* 75 Mo. 612 ; *Brick Co. v. Railroad,* 18 Mo. App. 626.

BLACK, J.—The plaintiffs are the minor children of Patrick Walsh. They prosecute this suit by their next friend to recover damages for the death of their father, who, it is alleged, was injured by the negligence of defendant, and that he died from the injuries so received.

The cause of action is based upon an alleged negligent violation of an ordinance of the city of St. Louis, limiting the rate of speed of cars and locomotives propelled by steam to not exceeding six miles per hour.

The petition states that Walsh was in bed at a house near the corner of the Levee and Poplar street; that an engine and cars, operated by defendant's servants at a speed exceeding six miles an hour, ran off the track against the walls of the house aforesaid, whereby the walls were overthrown and fell upon Walsh ; that Walsh received internal injuries in the stomach and bowels by reason of the negligence of defendant's servants in operating the engine and cars at said rate of speed and from which injuries he died.    The answer is a general denial and contributory negligence.

The defendant offered no evidence, but interposed a demurrer to that produced by the plaintiffs, which was overruled.    Insufficiency of the evidence to support the verdict is the basis of all of the objections urged by the appellant in this court.

The evidence shows that Patrick Walsh, the deceased, and one Schofield were sleeping in an office building owned by Norton for whom they were working.

The witness Katz testified that his place of business was on South Levee, one block from Poplar street; that he was standing in front of his door and saw the train before it ran into the house ; that it was a long train and was running at a rate of speed from eighteen

to twenty miles per hour ; that he did not see the train strike the house but he saw it stop there.

Police Officer Messer gave evidence as follows : "I recollect the accident in which the office on corner of the Levee and Poplar street was injured ; I was there in a few minutes after it was struck ; the office was on the southwest corner of the Levee and Poplar street." Being asked, "Where does the Missouri Pacific track run ?" he answered : "It comes in right through the lumber yard, south of the office ; the track runs right close to it. The office stands on the outside of the curve. Saw the cars that were wrecked ; saw cars directly across the track ; there were three cars standing one by the side of the other. I could not say which one struck the office ; it was completely demolished." He says he saw Walsh there and that two or three men were holding up the roof for him to get out. The office was a one-story brick building. The witness says he does not know how many cars were off the track ; there may have been six, eight or ten ; saw but one engine and that was at the rear of the train. Other evidence tends to show that there was one and perhaps two at the front of the train. Another witness says he saw cars in every direction; that he found several cars demolished; that he saw one car wheel lying on the track with the flanges broken, but could not say that this wheel came off one of the cars in question.

On the subject of the injuries and their effect, it is shown that the roof of the building fell down and brick were thrown upon the bed in which Walsh was sleeping. Walsh was taken to the city hospital the day after he received the injuries. The physician who attended him there says : "There were contusions about the abdomen, and there was some internal inflammation from those injuries, and there was evidently some spinal injury, just how much it was impossible to tell. He complained a great deal of pain when I felt upon the abdomen and spine. He was at the hospital about two

weeks and improved very little while there." Dr. Prim says he saw Walsh about a month after he was hurt, and that Walsh only lived a week after his first visit; that he found Walsh with a very much enlarged liver, and tenderness at the front part of the abdomen; that Walsh complained when he pressed on the abdomen and over the region of the liver. The evidence of two witnesses is that before the injuries Walsh was a stout, hearty, laboring man. Other evidence shows that he was around the place of the accident with Schofield for a few days after he left the hospital; that he complained, was unable to work, and was not a well man.

1. The first point made by the appellant is that there is no competent evidence showing that the train was running at a rate of speed exceeding six miles an hour. This case is quite unlike that of *Williams v. Railroad*, 96 Mo. 275. There the witness did not see the moving cars; he heard the noise from the collision only, and was at his stable and not at the place of the accident. Under such circumstances his evidence was deemed to be of no value. Here the witness Katz who says the train was running eighteen or twenty miles per hour was standing in his door with the train in front of him. It was in the night time, it is true, but he says the streets were lighted and that there were lights on the cars. The case just cited asserts the rule to be that the rate of speed of moving cars may be shown by the opinion of a witness who saw the cars in motion. Such an opinion no more involves a question of science than does an opinion concerning the speed of a horse. One who sees a moving train and possesses a knowledge of time and distance is competent to express an opinion as to the rate of speed at which the train is moving. *Railroad v. Van Steinburg*, 17 Mich. 99. See, also, *Pence v. Railroad*, 42 Am. & Eng. R. R. Cas. 126. The opinion of one who has never timed moving cars may not be as reliable as the opinion of one who has had

such experience, but that goes to the weight and not the competency of the evidence.

2. It is next insisted that the evidence does not show that the cars ran off the track in consequence of the unlawful rate of speed, and hence there is no connection between the negligent act and the injury. While the running of cars in a city in violation of an ordinance regulating the speed is in and of itself negligence, still it must be shown that the negligence in that respect had some agency in producing the injury complained of, for otherwise the negligent act goes for naught in the particular case. In this case the train was going over a curve, but whether the curve was slight or sharp does not appear; nor did the plaintiffs produce any evidence to show that it would be unsafe to run over this curve at a speed exceeding six miles per hour. It is, however, a matter of common information that cars leaving their track, when going eighteen or twenty miles per hour, will run further and produce more harm than they would if going six miles per hour only. This must be true where, as here, they are thrown out upon the streets of a city. The momentum of the car caused it to overthrow the walls and demolish the house in which Walsh was sleeping, and it was the speed of the train which gave to the car its destructive power. We think there is evidence from which the jury could of right find that it was the unlawful speed of the train which caused the car to overthrow and knock down the building.

3. Again it is objected that there is no evidence that Patrick Walsh died from the injuries which he received when the house fell upon him. Before this occurrence he was a stout and hearty working man. That he was seriously injured by the falling brick and roof there can be no doubt. The evidence of the physician who first attended him shows that there were serious internal injuries in the region of the liver and

abdomen ; that he improved very little while at the hospital.   The evidence of the physician who attended him during the last week of his life shows that he still suffered from these internal injuries.   He lived but little over a month after the accident.   These circumstances all tend to show that he died from the injuries then received, and we do not see how the jury could reach any other conclusion.

4.   But it is further urged that the evidence fails to show that defendant operated the cars which ran off the track, or owned the track from which they were thrown. Police Officer Messer describes where the track of the defendant is located in language which we have before quoted, and it is of this track he speaks when he says the cars had been wrecked thereon.   That the accident happened from cars running on the defendant's track is clear, and the presumption of fact is that they were operated by the defendant, in the absence of any other proof.

5.   The last objection is that there is no evidence showing that the accident did not happen between Arsenal and Ellwood streets.   The ordinance limiting the rate of speed exempts from its operation all tracks along the river between the above-designated streets. There is no direct evidence that the accident did not happen between those streets, but the bill of exceptions says : "The assertion by plaintiffs' counsel, that said Arsenal and Ellwood streets are away down south of the place where the injury complained of, was not denied by counsel for defendant, but he remained silent and seemed to acquiesce in the assertion."   We must take the bill of exceptions as we find it ; and, from the above statement found therein, it would seem to have been a conceded fact on the trial that the accident did not occur between those streets.

It results, from what has been said, that the judgment should be affirmed, and it is so ordered.   All concur.

SEPARATE OPINION ON REHEARING.

BARCLAY, J.—On further consideration of the case on this motion it appears to me that the ruling stated in the fifth paragraph of the opinion of the court may be supported upon another ground than that mentioned therein.

The evidence in the cause disclosed that the general direction of Poplar street is at right angles to the Mississippi river and to the Levee which there forms its western bank; that defendant's railroad runs east and west along Poplar street and thence around a curve to the Levee, along which it proceeds southward from Poplar. Some of the adjacent streets, intersecting the Levee along the railroad, south of Poplar street, are mentioned by the witnesses as Plum, Cedar, Mulberry and Chouteau avenue. No mention is made of Ellwood street in the evidence.

The courts are authorized to take notice, without proof, that Arsenal street is in a distant southern part of St. Louis, by reason of the language of the charter of that city, in which it is expressly named as one of the ward boundaries there. (See "Ninth ward" and "Eleventh ward," 2 R. S. 1889, pp. 2087 and 2088.) The charter of that city is expressly declared a proper subject of judicial notice in all courts by the constitution of the state. Const. 1875, art. 9, sec. 21.

The injury occurred on the curve from Poplar street to the Levee in a house situated on the southwest corner of the junction of those streets, while the train was moving toward the west.

As the railroad track changed direction at that point from the Levee to Poplar street, running at right angles to the Levee, thereby leaving the river bank; as none of the neighboring streets is Ellwood street, and, as we may notice judicially that Arsenal street is in another and distant part of the city, it seems to me sufficiently shown that the place of the accident is not within the exception of the ordinance.

The exact language of the latter is as follows :

"It shall not be lawful within the limits of the city of St. Louis for any car, cars or locomotive, propelled by steam power, to run at a rate of speed exceeding six miles an hour ; nothing in this section shall be so construed as to apply to any car, cars or locomotive, running over the track or tracks which are maintained along the river bank between Arsenal street and Ellwood street."

It was admitted in evidence without objection by defendant.

In view of all these facts it seems to me there can be no doubt that the ruling announced was correct and that the motion for rehearing should be overruled.