WILLIAM FRISBY et al., Appellants, v. ST. LOUIS TRANSIT COMPANY.

Division One, November 25, 1908.

1. **APPELLATE PRACTICE: Statement to Jury: Not Preserved.** If the statement of defendant's counsel to the jury in which he admits that defendant owned the street car at the time of the accident, is not preserved in the bill of exceptions, it cannot on appeal be considered for the purpose of showing such necessary fact or for any other purpose.

2. **NEGLIGENCE: Ownership of Car: Must Be Shown.** The evidence should support the allegations as to the ownership and operation of the car at the time of the killing of plaintiffs' son, and should show defendant, and not another company, to be liable. These facts need not be established by direct and positive testimony, but may be shown by reasonable inferences to be drawn by the jury from the facts and circumstances appearing in the evidence and trial. But the fact that defendant filed an answer in the nature of a general denial and that its counsel appeared and defended the suit is not a circumstance tending to establish such fact; and if there are no other facts or circumstances shown by the record from which defendant's ownership and operation of the car can be inferred, the court, on plaintiffs' appeal, will sustain the involuntary nonsuit.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

AFFIRMED.

*Boyle & Priest* and *T. M. Pierce* for respondent.

At the trial below appellants did not prove that the car doing the mischief to the plaintiffs' son was operated by this respondent. Appellate courts from time to time have held that very slight evidence as

to ownership is all that is necessary, but under the most liberal construction of appellate practice there must be some evidence, be it ever so vague and slight. The principle that insufficient evidence as to ownership, when unchallenged at the trial, will not be scrutinized too closely on appeal, has been recognized in the following cases: Kerr v. Railroad, 113 Mo. App. 1; Geiser v. Railroad, 61 Mo. App. 459; Johnson v. Railroad, 104 Mo. App. 588; Walsh v. Railroad, 102 Mo. 582; O'Keefe v. Railroad, 124 Mo. App. 619. The rule, however, that ownership must be proved by some evidence is unchanged and inflexible. Appellants, in their pleadings, alleged that the respondent's car was operated by its servants, but they offered no evidence in support of this allegation. Until proof was offered to fix liability upon respondent, no occasion arose for it to offer evidence. Having wholly failed to establish by proof the material allegations of their petition, the peremptory instruction should have been given. 17 Ency. Pl. and Pr., 598; Edmunds v. Railroad, 3 Mo. App. 602.

*Wm. L. Bohnenkamp* for appellants in reply; *Fry & Rodgers* of counsel.

(1) Respondent contends that appellants did not prove that the car which killed plaintiffs' son was operated by respondent. In this connection counsel for respondent cites Missouri cases in which the question of "failure to prove ownership" was involved and in which the appellate courts of this State have held that direct proof of ownership is not necessary. Respondent's counsel admits that the appellate courts of this State have held from time to time that very slight evidence as to ownership is all that is necessary and that the principle has been recognized that insufficient evidence of ownership, when unchallenged at the trial, will not be scrutinized too closely on ap-

peal, but contends that there is no evidence offered
by appellants to show ownership. It is true that there
is no direct proof of ownership, no doubt because that
fact was conceded by defendant's counsel in his open-
ing statement to the jury, but, aside from the opening
statement to the jury, the record before this court
is full of evidence and conduct on the part of defend-
ant's counsel, from which the jury could well infer
that defendant (respondent) was the owner of the
car in question and the car that did the mischief. The
following cases so hold: Walsh v. Railroad, 102 Mo.
582; O'Keefe v. Railroad, 124 Mo. App. 619; Kerr v.
Railroad, 113 Mo. App. 1; Geiser v. Railroad, 61 Mo.
App. 459; Johnson v. Railroad, 104 Mo. App. 588;
Keltenbaugh v. Railroad, 34 Mo. App. 152. (2) Re-
spondent cannot try the case below on the assump-
tion that it owned and operated the car in question
and then on appeal try the case on the theory that
it did not own and operate the car. Huss v. Hyde
Bakery Co., 108 S. W. 66. The demurrer at the close
of plaintiffs' case was argued pro and con at length,
parts of cases were read to the court and the facts
discussed by both sides. Plaintiffs' contention was
that defendant was guilty of negligence in the manner
stated in their brief and defendant contended that it
was not negligent, but that plaintiffs' boy was. And
never was there a word said about the failure of direct
proof of ownership, and again when the motion to set
the nonsuit aside was argued at a subsequent term,
not a word of a failure to prove ownership was said,
until at the close of this argument, when the court
said: "Have you gentlemen ever thought of the fact
that there was no direct proof of ownership in this
case, and what effect it would have if I were to sustain
the motion to set the nonsuit aside?" The court was
the first to speak of it, and not until at the close of
the arguments on the motion to set the nonsuit aside.

Then after calling the court's attention to the witness Hurt's testimony and the conduct of defendant's counsel and the opening statement made by counsel on both sides, the court said that he would not overrule plaintiff's motion on that account. This is not in the record, but I do not believe respondent's counsel will dispute that this was said and done. The question of ownership was certainly unchallenged at the trial of this case, and, therefore, according to the contention of respondent's own counsel in his brief, ownership is sufficiently established in this case. That insufficient evidence as to ownership, when unchallenged at the trial, will not be scrutinized too closely on appeal is well settled by the appellate courts of this State. Walsh v. Railroad, 102 Mo. 588; O'Keefe v. Railroad, 124 Mo. App. 619; Johnson v. Railroad, 104 Mo. App. 594.

WOODSON, J.—This suit originated in the circuit court of the city of St. Louis, and upon a change of venue the cause was sent to the circuit court of Audrain county. The suit was instituted by plaintiffs to recover of defendant the sum of $5,000 damages sustained by them for the alleged negligence in killing their minor son on the 29th day of September, 1903. There was a trial had before the court and jury, and at the close of plaintiffs' evidence defendant asked and the court gave an instruction in the nature of a demurrer to the evidence. Thereupon plaintiffs took a nonsuit with leave to move to set same aside, and after failing in that regard they appealed the cause to this court.

At the very threshold of this case we are met with the contention of the respondent that there is no evidence contained in the record which tends to show that the deceased was killed by one of its cars, or that it owned or operated the car which struck and killed the plaintiffs' son.

It is conceded by counsel for appellants that there is no direct or positive evidence which tends to show that the respondent owned or was operating the car at the time the boy was struck and killed, but he contends that such ownership may be shown by reasonable inferences to be drawn by the jury from the facts and circumstances appearing in the record. As an abstract legal proposition that is unquestionably true. [Walsh v. Railroad, 102 Mo. 582.] But the trouble with applying that rule to the facts of this case is the total absence from the record of all facts and circumstances from which such inferences could be reasonably drawn.

It is first insisted by counsel for appellant that the opening statement made to the jury by counsel for respondent virtually concedes the ownership of the car, and that such concession was sufficient to carry that issue to the jury. If the statement referred to had been preserved in the record, then, unquestionably, it would have been sufficient evidence from which the jury might have reasonably inferred ownership on the part of the respondent; but, unfortunately for appellants, upon an inspection of the record we find that the statement is not incorporated or preserved in the bill of exceptions, and for that reason we have no authority to consider it for any purpose whatever upon this appeal. [Priddy v. Hayes, 204 Mo. 358.]

Counsel for appellants have with great care condensed or abridged all the evidence contained in the record from which he contends the jury might have reasonably drawn the conclusion that the respondent owned and operated the car at the time the boy was killed. That abridgment is as follows:

"Defendant's counsel on cross-examination of one of plaintiffs' witnesses asked the following question:

"And you looked forward and the boy had come right on the track in front of the car? A. Yes, sir; the motorman hallooed 'Oh,' he was just a foot away.

"Q. Just a foot away from the track? A. Yes, sir.

"Q. And the motorman did all he could .to stop the car. A. To shut the power. Yes, sir.

"Objection by Mr. MILLER (one of defendant's counsel): The defendant moves to strike out that part of the answer which says the car was going at full speed, because it's indefinite, doesn't specify anything.

"Objection by Mr. ROBERTSON: We object for the reason that the accident is not predicated in any way on the speed of the car and there is no evidence to show what would be an unlawful speed or unreasonable speed or anything bearing on the subject at all.

"The COURT: I don't understand the inquiry is made with a view of showing that the speed was unlawful, but simply to show the surroundings.

"Mr. BOHNENKAMP: That's all, if the court please, and we want to show with reference to stopping the car.

"Mr. ROBERTSON: We also object because we don't think he is sufficiently. qualified to be an expert on that subject.

"Respondent's counsel on cross-examination asked this question: And you saw this car coming to the north? A. Yes, sir.

"Q. Now you looking down that way, saw the car coming up? A. Yes, sir.

"Q. And you saw the boy coming along walking from the west track to the east track? A. Yes, sir.

"Q. You were riding north on this car? A. Yes, sir.

"Q. Now, you had your back turned; you wasn't looking in the direction of the car. A. No, sir."

Mr. Hurt testified that he had operated cars in St. Louis and that he was familiar with the type of cars that were being operated on Broadway at the

time that appellants' boy was killed.   After further
questioning the witness as to the description and equip-
ment of the Broadway cars Mr. Robertson (defendant's
counsel) interrupted by saying: "That's cars gener-
ally—not this car."

"Mr. BOHNENKAMP: I asked about the Broadway
cars.

"Mr. ROBERTSON: There's a hundred cars on
Broadway; there may be different kinds of cars on
Broadway.

"The COURT: Qualify him as to the types if there
are more than one.

"Q. Were there more than one type used on
Broadway? A. Yes; I guess there's about three dif-
ferent kinds of cars.

"Q. I mean as far as equipment is concerned?
A. Oh, no; it's the same equipment; they use the
general electric system."

Mr. Robertson objected to a hypothetical ques-
tion: "Well, hold on; there's not sufficient elements;
in the first place the grade is not fixed; it's a pretty fair
grade.

"The COURT: He has seen the grade.

"Mr. ROBERTSON: I know, but still he hasn't given
it so anybody else can see it; the jury must see it,
the court must see it; it must go into the record, and
then not a word is said about speed.

"Mr. MILLER: The further objection that the wit-
ness has testified to several grades of cars, as many
as three, that were operated on Broadway, unless he
is able to state that this car was one of those particular
grades and state what car that was, the character of
the car, the testimony is inadmissible because it does
not show the size of the car, the weight of the car,
the condition of the car with reference to passengers
thereon, which must make a very material difference;

the proper conditions have not been submitted to this witness.

"The COURT: He inquires as to these various grades of cars.

"Mr. BOHNENKAMP: He said the equipment was the same. I will ask him this further question, if the court please: Q. The type of car that you refer to, there being no difference in the equipment, does that make any material difference in the way—affecting the starting and stopping? A. Oh, no; some cars, they take an old car and repair it up and make a new car and some shorter than others, some longer, some heavier than others; that's what I mean by different grades of cars; they are all the same type of motor and controller.

"The COURT: What effect, if any, does that have on stopping the car? A. Doesn't have any effect, I know of; some cars are lighter; of course, the lighter car could be stopped easier.

"Q. You are familiar with the cars used on Broadway? A. Yes, sir; the twenty-one hundred type.

"Q. That's the way they number them, by the numbers; a certain line has certain numbers? A. Yes, sir; Olive street is three hundred.

"Q. And no other cars than that type run on Broadway? A. Not at that time I don't think.

"Mr. BOHNENKAMP: Now, as far as the type of the car is concerned I think he has qualified on that; with reference to the passengers on the car we will see what we can do on that and I will withdraw this witness.

"Q. That's the way they number them, by the numbers; a certain line has certain numbers? A. Yes, sir; Olive street is three hundred.

"Defendant's counsel, Mr. Robertson, makes this objection to a hypothetical question: We object to that question; it's not composed of sufficient elements;

I tried a case up here once and I remember they said there were two kinds of motors; there are two-motor cars and four-motor cars; the more force there is the more power there is, the more power there is to stop with.

"The Court: The witness has already said there. was only one kind on that line.

"Mr. Robertson: He said generally, but he didn't know for certain; may I ask him a question?

"The Court: Yes, sir.

"Q. Do you know what kind of car this was? A. No, sir.

"Q. You are just speaking of cars generally that run on Broadway? A. Yes, sir.

"Q. Do you know whether they are two-motor or four-motor cars? A. Most of the cars were motor cars at that time.

"Q. Some were four-motors, wasn't they? A. I don't think at that time.

"Q. What was your opportunity for observation of the cars on Broadway running north and south? A. I crossed the street eighteen times a day.

"Q. Well, you made no inspection of the cars? A. Oh, yes; we have to look at them you know.

"Q. Well, you didn't get onto them and see how many motors and didn't see how they were equipped; you don't know what number this car was? A. No, sir.

"Q. What numbered car was it; they had other type cars, didn't they; they had a series of cars? A. Yes.

"Q. Those are different-sized cars? A. Yes, sir.

"Q. And different make-up? A. Yes, sir.

"Q. You don't know what size this car was? A. No, sir.

"Q. All you aim to say is that they generally run the type of twenty-one hundred at that time? A. Yes, sir.

"Q. But they may have run others there you don't know anything about? A. They may have run others at that time; yes, sir.

"Mr. ROBERTSON: We object.

"The COURT: Q. Were you familiar with the type running on Broadway at that time? A. About that time, yes, sir.

"The COURT: You may answer the question.

"Mr. ROBERTSON: We object for the reason his familiarity with the type would not be sufficient because he doesn't know this particular car and he said in cross-examination that other cars might have run there as far as he knew.

"Mr. BOHNENKAMP: They may have had a mule car on that track as far as that's concerned sometime during the day.

"Mr. ROBERTSON: No, they didn't, a mule had to get out of the way of electricity.

"The COURT: Answer the question."

At the bottom of page 47 of the abstract witness Hurt in answer to a question about the motorman operating the fender on the car, said:

"Yes, there's a fender, he pulls a lever and drops; it's another kind of fender; I don't think they use them though; they were trying several kinds at the time I quit, and I believe they adopted this one I speak of, the one you run up against the fender, the lower fender or life fender drops on to the rail.

"Defendant's counsel objects to the offer of the fender ordinance in evidence, and says: This ordinance is entitled, 'Fenders to be provided, approval of;' the petition charges that we complied with that ordinance, therefore the ordinance is wholly immaterial."

After a very careful consideration of all of this evidence, we are unable to see how it could be inferred therefrom that the car in question was owned or was being operated by the respondent at the time it struck and killed appellants' son. All of that evidence would apply equally as well to the Suburban Railway Company or to any other company operating a street car system in the city of St. Louis.

The street car tracks on Broadway and the cars which were being operated thereon at the time of the injury might have belonged to any of the latter companies, at least there is nothing in the evidence which shows anything to the contrary except the mere fact that counsel for respondent conducted the trial of the cause. If that fact alone constituted sufficient evidence from which the inference of ownership might be drawn, then in no case where a defendant appears in a cause by counsel could such a failure of proof ever be successfully raised, because the inevitable answer would be, why are you defending the cause if you and your car did not cause the injury? Yet the books are full of cases which hold that "the evidence should support the allegations as to ownership and operation of the train and road at the time of the injury, and should show the defendant, and not another company, to be liable." [17 Ency. Plead. and Prac., 598.] "In an action for damages, where it does not appear from the pleadings and evidence that the car, by which plaintiff was injured, was in use by defendant, and where it is not shown that the car was running on defendant's railway, and where the connection between defendant and those in charge of the car is not shown, plaintiff cannot recover." [Edmunds v. Railroad, 3 Mo. App. 602, 603.] The same rule has been announced in the following cases: Kerr v. Railroad, 113 Mo. App. 1; Geiser v. Railroad, 61 Mo. App. 459; Johnson v. Railroad,

214 Sup.—37

104 Mo. App. 588; Walsh v. Railroad, 102 Mo. 582; O'Keefe v. Railroad, 124 Mo. App. 619.

It must follow from these observations that the action of the trial court in sustaining the demurrer to appellants' evidence was proper, and that the judgment of the circuit court should be affirmed.

.It is so ordered.

All concur.