## HUGGINS v. TEXAS & N. O. R. CO.
### (No. 2287.)

Court of Civil Appeals of Texas. El Paso. May 9, 1929.

Rehearing Denied May 30, 1929.

Jno. T. Hill, of El Paso, for appellant.

Baker, Botts, Parker & Garwood, of Houston, and Kemp & Nagle and E. R. Smith, all of El Paso, for appellee.

HIGGINS, J. Appellant brought this suit against the appellee to recover damages for the loss of a finger. Upon peremptory charge there was verdict and judgment for defendant.

The plaintiff alleged he was a laborer, working for defendant under the direction of its foreman in its warehouses and shops in El Paso.

"3. That while in the discharge of his duty, plaintiff picked up a box and stuck his finger on a nail, which stuck in the forefinger of his right hand.

"4. That when the plaintiff received an injury and was stuck in the forefinger on his right hand by a nail it was of a serious character, and it was the duty of the defendant to render medical aid and attention to the de-

fendant, by virtue of a contract had between defendant railroad company and the plaintiff, and said defendant failed to do so. That said finger was wrapped up and plaintiff was sent back to work. That it was dangerous for the plaintiff to go back to work, and he notified his foreman that he could not work with his finger, and did not want to, but his foreman told him it was all right for him to go to work, which he did. That the plaintiff was ignorant of the danger of working with said hand and relied upon the superior knowledge and experience of the foreman and continued to work with same until it became infected, resulting in the amputation of said finger, and causing blood poisoning and loss of his teeth and rendered him unable to work by reason of said injury, and he became faint and sick from day to day and was unable to work for a long time for as much as thirty minutes to an hour.

"5. That plaintiff would report to his foreman whenever he would be sick that he was unable to work because he thought he needed medical attention, but his foreman would assure him his finger was all right and to go back to work and it would not hurt him to work, and plaintiff, relying upon the superior knowledge and experience of his foreman, continued to work.

"6. That the amputation of his finger was caused by the carelessness and negligence of the defendant and its foreman in requiring him to work when he was in no condition to work and in depriving him of medical attention when he asked for medical attention."

Aside from some unimportant testimony of Dr. Stevenson as to plaintiff's injury, the only evidence offered was the testimony of plaintiff. He testified: "I have been working for the railroad company here right at ten years, in the yards at El Paso."

It was incumbent upon the plaintiff to establish the relationship of master and servant between defendant and himself. The quoted testimony is as near as he comes to doing so. What railroad company he was working for is not shown. It may have been any of the railroads operating in El Paso. It is a matter of common knowledge that there are other railroads in El Paso besides the one operated by defendant. The quoted testimony is insufficient to show the plaintiff was employed by defendant. Frisby v. St. Louis Transit Co., 214 Mo. 567, 113 S. W. 1059; George Muehlebach Brewing Co. v. Dunham (Mo. App.) 177 S. W. 1067. At most, it furnishes but the basis of a surmise that defendant was the plaintiff's employer, but this is insufficient. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

Again, the plaintiff testified that: Immediately upon injuring his finger, "I went to Doctor Rheinheimer, he and Doctor Ramey are doctors for the railroad. Doctor Rhein-

heimer, he fixed it, squirted a lot of medicine down into it, he said: 'It is awful bad,' he said: 'You must not work with that finger,' I says: 'I got to work,' he says: 'Keep that hand away from it.' I went back to work. I went back to my old job. I went from the doctor's office right back there. I told my boss there about what the doctor said. I told him the doctor says I could not work, he said 'I can work only with one hand,' my boss says: "That is all right,' he says: 'I want you to go ahead and do the work, and use that hand, it won't hurt you.' That was Mr. Root that said that. I had never been hurt like that before. I believed what Mr. Root told me that it would not hurt my hand to use it. I went on and went to work."

This refutes the allegation that he was refused medical attention and sent back to work. It shows he voluntarily returned to his work from the doctor's office and engaged therein contrary to the doctor's orders.

In the state of the evidence the peremptory charge was properly given.

Affirmed.