San Antonio Traction Company v. Fannie Levyson et al.

Decided October 28, 1908.

**1.—Instructed Verdict—Rule as to.**

It is only where it is so clearly established from the undisputed testimony as to admit of no other reasonable hypothesis or conclusion than that either a fact essential to plaintiff's cause of action is not proved, or one which is a complete defense has been shown, that it becomes the duty of the court to instruct a verdict for the defendant.

**2.—Same—Negligence—Question of Fact.**

The question of negligence vel non is primarily one of fact to be determined by the jury, and it only becomes one of law to be decided by the court when the facts are undisputed and only one conclusion can be drawn from them. In a suit against a street car company for damages for the death of a pedestrian, evidence considered, and held to require a submission to the jury of the issues of negligence and contributory negligence.

**3.—Verdict—Sufficiency of Evidence.**

In passing upon assignments of error to the effect that the evidence was insufficient to support the verdict and that the court erred in refusing to instruct a verdict for defendant, the evidence should be viewed in the light most favorable to the findings of the jury manifested by their verdict.

**4.—Contributory Negligence—Burden of Proof.**

Upon an issue of contributory negligence, the burden is upon the defendant alleging it.

**5.—Street Cars—Railways—Pedestrians—Right of Way.**

The general public has an equal right with the street railways to the use of the public streets, even that part of the street occupied by the tracks. It is otherwise as to steam railways; and the fact that a pedestrian stepped immediately in front of a moving street car would not of itself make him guilty of contributory negligence; the surrounding facts and circumstances must be considered.

**6.—Street Railways—Duty of Lookout—Charge.**

In a suit against a street railway company for running over and killing the plaintiff's husband, as to the duty of the defendant to keep a lookout for people upon the street the court charged the jury as follows "And you further find that the motorman operating said car failed to keep a lookout for said deceased on or along said defendant's track at said time and place, etc." Held, not subject to the objections that it imposed the duty of keeping a lookout for the deceased in particular, instead of the public in general, and that it submitted an issue not made by the evidence, in that deceased was not walking along, but across, the track.

Appeal from the 45th Judicial District, Bexar County, Tried below before Hon. J. L. Camp.

*Ogden, Brooks & Napier,* for appellant.—The undisputed evidence shows that Paul Levyson, the deceased, was guilty of negligence that caused or contributed to his death in stepping immediately in front of a moving car.  Sabine & E. T. Ry. v. Dean, 76 Texas, 73; Galveston, H. & S. A. Ry. v. Chambers, 73 Texas, 296; Galveston, H. & S. A. Ry. v. Ryon, 80 Texas, 61; Sanches v. San Antonio & A. P. Ry., 88 Texas, 117; Gulf, C. & S. F. Ry. v. Wilkins, 32 S. W., 351; Gulf, C. & S. F. Ry. v. Abendroth, 55 S. W., 1122; Ft. Worth & D. C. Ry. v. Wyatt, 35 Texas Civ. App., 119; Gulf, C. & S. F. Ry. v. Miller, 70 S. W., 25.

When the undisputed evidence adduced by the plaintiff on the trial establishes prima facie, as a matter of law, contributory negligence on the part of the plaintiff, then the burden of proof is upon him to show facts from which the jury, upon the whole case, may find him free from negligence; otherwise the court must instruct a verdict for the defendant, there being no issue of fact for the jury.  Gulf, C. & S. F. Ry. v. Shieder, 88 Texas, 163; Denison & S. Ry. v. Carter, 70 S. W., 324; Missouri, K. & T. Ry. v. Jolly, 31 Texas Civ. App., 512.

*Terrell, Hopkins & Terrell, H. C. Carter* and *Perry J. Lewis,* for appellees.  Cited:  San Antonio Traction Co. v. Haines, 100 S. W., 788; San Antonio Traction Co. v. Upson, 31 Texas Civ. App., 50; Dallas Street Ry. Co. v. Illo, 32 Texas Civ. App., 290; San Antonio Traction Co. v. Kumpf, 99 S. W., 863; San Antonio Street Ry. Co. v. Renken, 15 Texas Civ. App., 229; Copeland v. Met. St. Ry. Co., 73 N. Y. Supp., 856; same case on second appeal, 79 N. Y. Supp., 1054; Kennedy v. Third Ave. Ry. Co., 52 N. Y. Supp., 551; Tacoma St. Ry. Co. v. Hays, 110 Fed., 496; Citizens Rapid Transit Co. v. Seegrist, (Tenn. Sup.), 33 S. W., 920; Barrie v. St. L. Tract. Co., 96 S. W., 233; Nellis St. Ry. Accident Law, p. 251, sec. 9 and p. 339, sec. 29.

NEILL, ASSOCIATE JUSTICE.—The appellees, who are the widow and children of Paul Levyson, deceased, sued the appellant for causing his death by negligently running one of its street cars over him.  The negligence charged was:  (1) in failing to sound the gong; (2) in failing to have the car equipped with a fender; (3) in failing to have the car under complete control, as required by city ordinances; (4) in failing to keep a lookout; and (5) in running the car at a greater rate of speed than allowed by city ordinances.

The defendant, after interposing general and special exceptions to plaintiffs' petition, answered by a general denial, specially denied that it was guilty of any of the several acts of negligence alleged, and pleaded contributory negligence of the deceased in stepping immediately in front of the moving car, alleging that he, while waiting for and intending to board defendant's northbound car, when he knew that it was coming, stepped immediately in front of the same; and that in so doing he was guilty of contributory negligence, which caused his death.

The trial of the case resulted in a judgment for the appellees in the sum of $7,000.

As the first assignment complains of the court's refusing defendant's motion, upon the close of plaintiff's testimony, to instruct a verdict in

its favor; the second, of the refusal of a requested special instruction to the jury to return a verdict for defendant; the third, of the failure of the court to grant a new trial upon the ground that the undisputed evidence showed the deceased was guilty of contributory negligence in going upon defendant's track immediately in front of a moving car; and the fifth, of its failure to grant a new trial upon the ground that the *great preponderance* of the evidence showed deceased was guilty of contributory negligence in going upon the track immediately in front of a moving car—the findings of fact will determine the merit of each of the four assignments mentioned, and they will all be disposed of in connection with our

*Conclusions of Fact.*—About two o'clock in the afternoon of July 10, 1905, Paul Levyson, the husband of appellee, Fannie Levyson, and the father of the other appellees, was struck, knocked down, run over and killed by one of appellant's electric street cars at the intersection of Guenther and South Alamo Streets. At that time appellant maintained and operated an electric street car line which ran along South Alamo Street, which is intersected and crossed by Guenther Street. It then maintained two car tracks along said street extending south across Guenther Street to a point near a bridge across San Antonio River, at which point one of the tracks is terminated by a switch which connects it with the other. The distance between the inner rails of these tracks where Guenther Street is crossed, is four and nine-tenths feet, which continues south nearly to the point of their convergence. The cars going north ran on the track on the east side of the street, and those running south on the west side. The distance from the south side of Guenther Street to the end of the switch which connects the two tracks is one hundred and fourteen feet. The length of the switch is thirty-four and three-tenths feet. The distance from the switch to the bridge is sixty-four and seven-one-hundredths feet, the entire distance from the south line of Guenther Street to the bridge being two hundred and thirteen feet; and the bridge is nearly one hundred feet long. The sidewalk on the east side of Guenther Street is six feet wide, and the distance from its inner curb to the railway track is twenty-eight feet; on its east side, the sidewalk is seven and one-half feet wide and the distance from the curb is thirty-five feet. There was, and had been a long time prior to Levyson's death, a bench under a shade tree on the southwest corner of the intersection of the streets, used by persons waiting to take passage on defendant's cars, and a telephone pole just north of the bench. The custom of the defendant company was to stop its cars to let off and take on passengers after its car crosses a street. In accordance with this custom its cars running north into the business part of the city would stop after crossing Guenther Street at its northeast corner, and passengers waiting at the bench under the shade to take a northbound car would have to cross over the street diagonally to that corner in order to get aboard. There was a clear view from the southwest corner of Guenther Street of the street car track south to and across the bridge, and further, until it turns a corner; but such view does not extend from the bench, because obstructed by a fence, nor from the telephone pole; and the motorman on the northbound car would

have had a clear view of anyone crossing the street diagonally, unless obstructed by a car on the other track.

The deceased, who resided not far from the point of intersection of the streets, when going to his place of business on defendant's cars, usually took passage at this place. On the day of his death, after eating his dinner, he started from his home to his place of business, intending to take one of defendant's cars running north, at the intersection of Guenther and South Alamo Streets. A few minutes afterwards he was seen by Mr. Guenther in a sitting posture, leaning against the telephone pole, talking to someone on the adjacent bench. A car going south had evidently just passed, though not observed by the witness, or if it was, it had escaped his recollection when he testified upon the trial. The witness then saw him arise from where he was sitting and start diagonally across the street towards its northeast corner, where defendant's cars going north usually stopped to let off and take on passengers. The witness did not notice whether he walked or ran, but supposed he moved pretty fast; though he didn't notice deceased all the time from when he saw him get up. His attention was called next to him by hearing a shriek and then he saw the accident. He observed no change in the speed of the car before it struck Levyson; and he said that it must have been south of the spur when deceased started across. He had no recollection whether he heard the gong sounded or not. This witness saw the northbound car stop after it struck Levyson.

Another witness, who visited the scene of the accident a few moments after it occurred, testified: "When I got down there the body was under the car . . . kinder doubled up, with the wheels touching against a portion of the neck and head. The body was all doubled up like it had been rolled and mashed. . . . A man named Turner lives there on the corner, and the car was just a little south of his front gate, very near the corner. I noticed three blood marks on the ground, one distinctly visible about the middle of the street. The blood spot I observed particularly was right about the middle of Guenther Street and in the middle of the east rail. And in the middle of the track near where this blood spot was, about two feet from it, it started. It was just like you had rolled something. The body lay somewhere north of the crossing, under the first or second truck of the car. I remember when the body was taken out. Yesterday morning . . . I stepped it off to see—I had been told I would be called as a witness in the case, and I stepped it off, and it was seventeen full steps from the place in the middle of the street to the place where the body was—I remember pretty definitely where the body was."

Mr. Hildebrand, who was on the car when the collision occurred, testified: "As we approached the intersection of Guenther Street on South Alamo Street, and as the car came to where there was a switch it kind of slowed up and we passed the other car, and, after we passed the other car—why, the car made a jolt and stopped—the motorman stopped and got down and looked under the car. The jolt was like you would strike some rocks or something like that. . . . At the time, the conductor was taking my fare from me. . . . Just before I felt the jolt the motorman looked back at the car that had just passed by. I felt the jolt just about the time I felt for the fare to pay the

conductor. The motorman jumped down off the car and looked underneath and I saw from his expression there was something wrong. . . . He had an expression that something had happened—turned pale . . . so I could see from his countenance there was something wrong. The conductor was standing by me and he and I jumped off about right together and we saw the man under the car. . . . I don't believe I noticed any slacking in the movement of the car after it passed the other car. It was not going at a very fast speed after it passed the other car. It was a little slower than the usual speed because we had just passed the other car and it hadn't got under good headway. We passed the southbound car this side of where the switch is, . . . and I suppose it was on the main line at the time we hit the man. . . . I am sure we had passed the southbound car entirely, that is the two cars were clear of each other. At the time I felt the jolt I don't know in which direction the motorman was looking. It was before the jolt came that I saw him looking to the rear, towards the car that had passed. It was just an instant before the jolt came. I didn't feel the application of the brakes, or sudden stopping of the car, just before feeling the jolt; but after the jolt I did; I think he put on the brakes right then. I think he must have put on the brakes just after the jolt. I felt the application of the brake after the jolt. The man was under the right hand side of the car going north . . . under the first wheels. It would be a hard matter for me to tell whereabouts on Guenther Street I got off the car with relation to the south or north boundary line of the street. . . . I didn't notice the bench at that time, but saw it there afterwards. The bench is on the corner right across, at the southwest corner of Guenther and South Alamo Streets. . . . The car that we passed would be between the car I was on and that bench. The car passed on the west track and we were on the east track, the bench being on the west side of the street, so the southbound car that we passed would be between me and the bench."

Mrs. Hildebrand, who was also a passenger on the car, testified: "I was a passenger on a car on South Alamo Street, coming from the Aransas Pass depot on July 10, 1905, at the time Mr. Paul Levyson was run over by a car on Guenther and South Alamo Streets. The first thing that attracted my attention to the happening of an accident was the sudden jolt of the car. I knew something had happened and watched the motorman's countenance to see if it was serious and I heard him say 'There must be clods of dirt under the track.' This was almost instantly after I felt the jolting, because he stopped the car. Just an instant, or a very short time prior to feeling that jolt, I noticed that the motorman was looking back, but not at that time. It was not long before I felt the jolting that I saw him look back; just a few seconds before. . . . He was making no effort to stop the car at the time he was looking back. The motorman commenced stopping the car as soon as he felt that he was running over somebody or something. I never observed any effort to stop the car before the jolting."

Neither conductor nor motorman in charge of and operating the car was called as a witness by either party, nor testified in the case; and as the testimony recited is practically all the evidence introduced, the

issues of fact, which must control the disposition of the four assignments of error, must largely be determined from deductions drawn from the testimony introduced, and the failure of the defendant to introduce witnesses at its command who were evidently familiar with the facts and circumstances which elucidate and make clear such issues of fact. In determining these issues we shall view the evidence in the light most favorable to the findings of the jury manifested by their verdict.

The two first assignments of error involve one or both of these propositions:

1. That it appears from the undisputed evidence as a matter of law, that defendant was free from any of the acts of negligence alleged by plaintiffs as their cause of action:

2. That it appears as a matter of law from the evidence that deceased was guilty of negligence which proximately contributed to his death.

The third and the last assignment referred to also involve, with a slight modification of it as to the latter, the second proposition.

The question of negligence *vel non* is primarily a question of fact to be determined by the jury, and only becomes one of law to be decided by the court when the facts are undisputed and only one conclusion can be drawn from them.

"It is only where it is so clearly established from the undisputed testimony as to admit of no other reasonable hypothesis or conclusion that either a fact essential to plaintiff's cause of action is not proven, or one which is a complete defense has been shown, that it becomes the duty of the court to instruct a verdict for the defendant." (Southern Pac. Co. v. Winton, 27 Texas Civ. App., 503; Lee v. International & G. N. Ry., 89 Texas, 583; Choate v. San Antonio & A. P. Ry., 90 Texas, 83; Bonn v. Galveston, H. & S. A. Ry., 82 S. W., 808; Johnson v. Texas Cent. Ry., 42 Texas Civ. App., 604; Anson v. Gulf, C. & S. F. Ry., 42 Texas Civ. App., 437; Reynolds v. Galveston, H. & S. A. Ry., 99 S. W., 569; Galveston, H. & S. A. Ry. v. Patillo, 45 Texas Civ. App., 572; Herring v. Galveston, H. & S. Ry., 108 S. W., 977; St. Louis & S. F. Ry. v. Summers, 51 Texas Civ. App., 133.

In view of this well-settled principle of law, we will examine the testimony recited in order to determine whether either of the propositions involved can be established.

1. Is the evidence such that the only conclusion that can be drawn from it by reasonable minds is that none of the acts of negligence charged by plaintiffs as the cause of Levyson's death, was proved?

As is seen from our statement of the pleadings, among the acts of negligence averred by plaintiff is that the motorman operating the car failed to exercise ordinary care in keeping a lookout for people upon and at the intersection of the streets where the accident occurred. As to this averment, we think the conclusions can reasonably be deduced from the testimony of the witnesses Hildebrand that the motorman failed to exercise such ordinary care; and, from the facts and circumstances in evidence, that such failure on the part of the motorman was negligence, and that such negligence was the proximate cause of deceased's death. And we so conclude as matters of fact.

As this was the only one of the grounds of negligence alleged by

plaintiffs submitted by the court to the jury, we need not pursue the question further. But were we required to go beyond the conclusion announced, we would be strongly inclined to hold that the evidence of other acts of negligence charged is not such as precludes reasonable minds from the conclusion that some of them, at least, were shown.

2. Was the deceased guilty of contributory negligence as a matter of law? The burden of proving the defense of contributory negligence as a defense is upon the defendant; and upon such an issue, if there is from the evidence room for a reasonable difference of opinion, as upon other issues, the judgment of the jury must be taken. (Drake v. San Antonio & A. P. Ry., 99 Texas, 240.) If it be conceded, as appellant contends, that deceased stepped immediately in front of a moving car, it does not necessarily follow that he was guilty of negligence *per se.* This depends upon the attending facts and circumstances. It has been held, even in a case where one stepped on a railway track immediately in front of a string of moving railway cars and was killed by being run over, that the jury were warranted in finding he was not guilty of contributory negligence in view of the facts and circumstances. (Galveston, H. & S. A. Ry. v. Conuteson, 51 Texas Civ. App., 1.) The cases of Texarkana & Ft. S. Ry. v. Frugia, 43 Texas Civ. App., 48, and St. Louis & S. F. Ry. v. Summers, 51 Texas Civ. App., 133, are of like import. The law upon a question of this character is much more favorable to one who goes upon a street railway track in front of a moving car than it is to one who steps in front of a steam engine. In the former case the rights and duties of the parties are reciprocal. In the latter the right of the railroad to the use of its track is *ex necessitate* superior to the individual, and if he interferes with this right by going on a railway track in front of a moving train, he ordinarily becomes a trespasser, and guilty of negligence as a matter of law. A street railway, as its very name imports, is ordinarily constructed and maintained in streets of cities which are intended for and used by the general public, and this use of the public of the streets is not subordinate to the use of a street car company to run its cars along it. In the exercise of the right to run its cars along a public street the company must regard the rights of the public in its use, and operate them with due regard to the right of individuals. Ordinarily, a member of the public will not be guilty of negligence when he is in the legitimate exercise of the use of a public street, even though it be that part upon which a street railway is constructed over which the company propels its cars. As it necessarily takes on and discharges its passengers in the streets over which it runs its cars, it is its duty to especially exercise ordinary care to prevent injuring those who are on the street and crossing its track for the purpose of taking passage.

As is seen from the evidence recited, Levyson left his home after dinner for the purpose of taking passage upon defendant's northbound car in order to return to his place of business. The car not having reached the junction of South Alamo and Guenther Streets, where it generally stopped for the purpose of taking on and discharging passengers, when deceased arrived there, he seated himself by the telephone pole, near the bench where passengers intending to take the car usually awaited its arrival. When he arose from his seat, it may be fairly presumed from

the evidence and circumstances that he knew, or had reason to believe, from having seen the southbound car pass that point, that it would be but a short time before the car he desired to take would reach the northeast corner of the street, where it would be expected to stop for the purpose of taking him on as a passenger, and, as he went diagonally across the street towards such corner, that it was for the purpose of boarding the car when it arrived there, and that he reasonably thought he had time to reach that point before the arrival of the north-bound car. He also had the right to presume, and act upon the presumption, that the car would slow down at the street crossing, and that its operators would see him in the street and give him timely notice of its approach, and that they would not so run the car as to injure him while in the exercise of his right in crossing the street, from the place the company had provided for waiting passengers to the point where it usually stopped the cars to take on those who intended to take passage north. Indeed, in view of the facts that the company had prepared a place at the southwest corner of the street for passengers to wait for its cars and that it stopped its north-bound cars at the northeast corner, may be taken as an invitation to those waiting at the bench for the cars to go across from the southwest to the northeast corner, and as an obligation on the part of its servants operating the car, to keep a lookout for persons who had accepted such invitation, and to regard the act of the crossing from one corner to the other as a signal to stop the car in order that they might take passage thereon. Evidently, the deceased was acting on these assumptions, and thrown off his guard, when he stepped upon the railway track and was knocked down and run over by the car; and for this reason, as well as the car's coming up from behind him, he was unaware of its proximity when he stepped in front of it. For, in the absence of evidence to the contrary, it must be presumed that the deceased, when he started across the street, had reason to believe that he could reach its northeast corner before the arrival of the car, and when he stepped upon the track that he had time to cross it in safety. It must be presumed that he did not knowingly place himself in the position where death was inevitable, and that he exercised ordinary care and prudence to insure his safety. As is said by the Supreme Court of the United States in Railway v. Landrigan, 191 U. S., 462: "We know of no more universal instinct than that of self-preservation, none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming and death." See, also, Texarkana & Ft. S. Ry. v. Frugia, 43 Texas Civ. App., 48; San Antonio Traction Co. v. Upson, 31 Texas Civ. App., 50; San Antonio Traction Co. v. Kumpf, 99 S. W., 863; San Antonio St. Ry. v. Renken, 15 Texas Civ. App., 229; Dallas St. Ry. Co. v. Illo, 32 Texas Civ. App., 290; San Antonio Traction Co. v. Haines, 45 Texas Civ. App., 289; Copeland v. Metropolitan St. Ry., 73 N. Y. Supp., 856; same case, 79 N. Y. Supp., 1054.

We, therefore, conclude that deceased was not guilty of contributory negligence as a matter of law; but that the question was one for the jury to determine, and the evidence warranted their conclusion that he was not

guilty of such negligence. From this it follows that the verdict upon this issue is not manifestly against the preponderance of the evidence.

· *Conclusions of Law.*—1. Our conclusions of fact, as is seen from them, dispose of appellant's first, second, third and fifth assignments of error.

2. The fourth assignment of error complains of the second paragraph of the court's charge, which is as follows:

"If you find from the evidence that on the 10th day of July, 1905, the deceased, Paul Levyson, was run over and killed by one of defendant's cars at or near the intersection of Guenther and South Alamo Streets, and you further find that the motorman operating said car failed to keep a lookout for said deceased on or along said defendant's track at said time and place, and that such failure, if any, was negligence, and that such negligence, if any, was the direct cause of deceased's death, and you further find that said Paul Levyson was not guilty of any negligence that either caused or contributed to his death, and you further find that said plaintiffs have sustained pecuniary damage in the death of the deceased, Paul Levyson, then you will find your verdict for said plaintiffs."

To this part of the charge it is objected, (1) That the law does not impose upon the operators of a street car the duty of keeping a lookout for any particular person, but merely imposes the duty to exercise ordinary care to keep a lookout for persons that may come or be upon its track; (2) that there was no evidence that the deceased was walking along the track, and the charge was misleading in submitting that issue.

If, as is conceded by appellant in its first proposition under this assignment, the law imposes upon the operator of a street car the duty to exercise ordinary care to keep a lookout for persons on the track, it follows that it was the motorman's duty, upon the occasion under consideration, to exercise such care to keep a lookout for any person on the track, which would include the deceased. The charge does not bear the construction contended for by the second objection.

3. Our conclusions of fact dispose of the sixth assignment of error adversely to appellant.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.