### EL PASO ELECTRIC RY. CO. v. TERRAZAS.   (No. 900.) *

(Court of Civil Appeals of Texas. El Paso. Jan. 9, 1919. Rehearing Denied Jan. 30, 1919.)

1. STREET RAILROADS ⟐114(2)—COLLISION—PROOF OF DEFENDANT'S OWNERSHIP OF RAILROAD—EVIDENCE.

    In an action for wrongful death resulting from a street car collision, defendant's ownership and operation of the street car in question need not be shown by direct affirmative evidence, but may be proved by circumstances.

2. EVIDENCE ⟐20(2) — JUDICIAL NOTICE — OWNERSHIP OF STREET RAILWAY AND OPERATION OF CARS.

    In an action for wrongful death caused by a street collision, the court could not take judicial knowledge that defendant owned the street railway, and was operating the particular line and the car in question.

3. STREET RAILROADS ⟐112(1)—EVIDENCE—OPERATION AND CONTROL OF CAR.

    In an action for wrongful death resulting from a crossing accident, the operation and control of the particular street car which caused the injury was an issuable fact, which must be established by evidence.

---

**4. STREET RAILROADS ⬤�método114(2) — CROSSING ACCIDENT—OWNERSHIP—CAR—EVIDENCE.**

In an action for wrongful death, evidence *held* sufficient to support jury's finding that deceased was killed by collision of the automobile he was driving with defendant's street car.

**5. STREET RAILROADS ⬤➙117(17)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

In an action against a street railroad company for wrongful death, where there was conflicting testimony as to whether deceased was guilty of contributory negligence, such issue was for the jury.

**6. STREET RAILROADS ⬤➙85(3) — USE OF STREETS—RIGHT OF PUBLIC.**

While the right of a steam railroad to use its tracks is superior to that of other persons, and one going upon the track at a crossing in front of a moving train ordinarily becomes a trespasser, such rule does not apply to street railroads in cities, since the use of the streets by other persons is not subordinate to that by the street railroad company.

**7. TRIAL ⬤➙194(17)—INSTRUCTION—WEIGHT OF EVIDENCE.**

A requested instruction that if one drives in front of a street car approaching at a high rate of speed, and is thereby injured, he cannot recover, was properly refused as being upon the weight of the evidence, there being evidence that such act was not negligent.

**8. TRIAL ⬤➙351(2)—INSTRUCTIONS—SPECIAL CHARGE—SUFFICIENCY.**

A requested special charge which was incomplete in failing to designate what question the jury should answer "No" was properly refused.

**9. TRIAL ⬤➙251(8)—INSTRUCTIONS—CONFORMITY TO PLEADING — CONTRIBUTORY NEGLIGENCE.**

In an action against a street railroad for wrongful death resulting from a crossing accident, it was proper to refuse an instruction that deceased was guilty of contributory negligence if he failed to look and listen for the approaching street car, where such act of contributory negligence was not pleaded.

**10. STREET RAILROADS ⬤➙98(2) — CROSSING ACCIDENT — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—CITY ORDINANCE.**

It is negligence per se to drive an automobile upon a street in violation of an ordinance requiring the use of a mirror upon the automobile to indicate to the driver vehicles following the car, where the automobile was so inclosed by curtains that the driver could not see to the rear.

**11. EVIDENCE ⬤➙10(3) — JUDICIAL NOTICE — CORPORATE LIMITS—STREET CROSSING.**

The court will not take judicial notice that the crossing of Latta street and Alameda avenue is within the corporate limits of El Paso, so as to be subject to an ordinance of that city relating to street traffic.

**12. STREET RAILROADS ⬤➙112(3)—COLLISION —CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—CITY ORDINANCE.**

In an action for damages resulting from crossing accident, the burden was on the street railroad company to show that the automobile was so curtained or covered as to obstruct or obscure the view of its driver to the rear, under which condition the city ordinance required a mirror, in order to establish driver's contributory negligence in not having the vehicle so equipped.

**13. EVIDENCE ⬤➙117—PRELIMINARY PROOF— VIOLATION OF CITY ORDINANCE.**

In an action against a street railroad for damages resulting from collision with an automobile, it was not error to refuse to permit the street railroad company to prove that a mirror was not attached to the automobile where there was no evidence showing the facts necessary under the ordinance to require the use of a mirror.

**14. TRIAL ⬤➙351(2)—SUBMISSION OF SPECIAL ISSUES—CERTAINTY OF QUESTION TO BE ANSWERED BY "YES" OR "NO."**

A request to find specially whether the deceased upon reaching Latta street "did or failed to do any of the following things": Turn across the street car track almost immediately in front of the approaching car, or suddenly turn across the track without giving any signal or warning of intention to cross in front of the car—*held* sufficiently intelligible to be answered by "Yes" or "No," particularly where aided by subsequent answer to another special question.

**15. APPEAL AND ERROR ⬤➙1031(5)—PRESUMPTIONS—MISCONDUCT OF COUNSEL.**

Where an objection is made to argument of counsel not set out in the bill, concerning special instructions, but the court states that the same was almost incoherent, in view of court rule 62a and of the discretion of the trial judge, it must be presumed that the jury were not misled, but were governed by the charge of the court, unless made to appear otherwise.

**16. TRIAL ⬤➙133(6)—MISCONDUCT OF COUNSEL.**

Although remarks of counsel may have been stronger than the evidence warranted, there was no reversible error where the court cautioned the jury not to consider the remarks.

**17. EVIDENCE ⬤➙123(10)—RES GESTÆ—COLLISION.**

In an action for wrongful death caused by a collision between defendant's street car and deceased's automobile, evidence that after the street car was stopped, in attempting to free the street car from the automobile, the latter was caused to fall upon the body of deceased before death, was admissible, not as proving a new, separate, and distinct ground of negligence, but as res gestæ, parts of the one continuous accident.

**18. APPEAL AND ERROR ⬤➙930(2), 1031(5)— MISCONDUCT OF COUNSEL—ARGUMENT—INSTRUCTIONS TO DISREGARD — PREJUDICE — PRESUMPTION.**

It must be presumed that jurors understood and obeyed the instruction of the court, and that

---

⬤➙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a withdrawal of remarks either by the attorney making them, or a direction by the court to disregard them, has removed any prejudice caused, and cured the error, unless injury is shown.

19. DEATH ☞99(4)—EXCESSIVE DAMAGES.

Where deceased was 41 years old, had a wife and six children, aged from 2½ to 15 years, was in good health, sober, and industrious, and his earnings had ranged from $1,500 to $2,500 per year, a verdict for $12,500 for his wrongful death was not excessive.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Francisca L. vda. Terrazas for the use of herself and six minor children, against the El Paso Electric Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Davis, Goggin & Harrington, of El Paso, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

Ware & Norcop, Frank Lyons, and Lea, McGrady & Thomason, all of El Paso, for appellee.

WALTHALL, J. Francisca L. vda. Terrazas brought this suit for the use of herself and her six minor children against the El Paso Electric Railway Company to recover damages for personal injuries to, and resulting in the death of, her husband and father of her said children, Arnulfo Terrazas, in El Paso, Tex., on the 24th day of January, 1917.

The issues presented in the appellee's petition are: That on the date mentioned appellant owned and was then operating a street railway in the city of El Paso, and was then and there using in its business cars driven along the street by means of electric power; that the deceased was operating his automobile in a westerly direction and along the north side of Alameda avenue, a public street, and upon which street appellant was at said time operating its street cars; that at the intersection of Alameda avenue and Latta street, also a public street, deceased turned his automobile south and along the westerly side of Latta street to cross from the northerly side of Alameda avenue to the southerly side, intending to continue south on Latta street to his home on that street; that just as deceased was in the act of crossing the appellant's street car track at the intersection of said streets one of appellant's cars, operated by one of its employés and traveling in a westerly direction, was carelessly, negligently, and wantonly, and without notice or warning to deceased of its approach, driven against and upon the automobile in which deceased was riding, overturning it, and while so overturned pushed and shoved it in front of said street car along its track for approximately 100 feet; that as a result of said collision the automobile was demolished, deceased, "by reason of being so struck by said car, and by reason of having his automobile overturned upon him, and pushed and shoved along said track, was killed, his body being crushed, bruised, and mangled."

The further acts of appellant complained of are submitted in the court's charge, and we will not state them here. Appellee prayed for damages, both actual and exemplary. Appellant answered by general demurrer, general denial, acts of negligence on the part of deceased, and contributory negligence.

The case was submitted to the jury on the special issues following, to which the jury answered as follows:

"Q. 1. Do you find from a preponderance of the evidence that on the 24th day of January, A. D. 1917, Arnulfo Terrazas was killed in a collision occurring at the intersection of Latta and Alameda streets between the automobile in which he was driving and a street car of defendant?" To which the jury answered: "Yes."

"Q. 2. Did the servants of defendant operating the car to the intersection of Latta and Alameda streets do, or fail to do, any of the following things:

"(a) Fail to give any notice or warning of their approach?" Answer: "Yes."

"(b) Did they approach said crossing at a rapid and unreasonable rate of speed?" Answer: "Yes."

"(c) In approaching said crossing did they fail to keep a lookout for persons using said crossing?" Answer: "Yes."

"(d) Did they fail to have the car under control when approaching said crossing?" Answer: "Yes."

"Q. 3. Was the defendant guilty of negligence in respect to such matters so found in the affirmative?" Answer: "Yes."

"Q. 4. Do you find from a preponderance of the evidence that such negligence, if defendant was negligent in any of the matters inquired about, was the proximate cause of the death of Arnulfo Terrazas?" Answer: "Yes."

"Q. 5. Do you find from a preponderance of the evidence that Arnulfo Terrazas, upon reaching Latta street, did or failed to do any of the following things:

"(a) Turn to his left and attempt to cross the street car track almost immediately in front of the approaching car?" Answer: "No."

"(b) Upon reaching Latta street suddenly turn to his left and attempt to cross the track in front of the approaching street car without giving any signal or warning of any character of his intention to so turn across in front of said approaching car?" Answer: "No."

"(Questions 6 and 7 were to be answered only in the event an affirmative answer was given to questions 5 and 6.)"

"Q. 8. What sum, if any, paid now, do you find from a preponderance of the evidence, would reasonably compensate the plaintiff and her minor children for the pecuniary damage, if any, suffered by them by the death of said Arnulfo Terrazas?" Answer: "$12,500.00."

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In answer to question 9, the jury apportioned the amount of the damages between the plaintiff and the minor children.

In answer to special question No. 12, submitted at the request of defendant, "Was the deceased, Arnulfo Terrazas, guilty of negligence in driving upon the street car tracks in front of the approaching street car?" the jury answered, "No."

Judgment was entered upon the verdict of the jury for the damages found, and in the several amounts as apportioned by the jury.

[1-3] Appellant presents sixteen assignments of error as grounds for reversal. The first two assignments are to the effect that there was no direct affirmative evidence introduced upon the trial of the case connecting the defendant] El Paso Electric Railway Company, in any way with either the ownership or operation of the street car which struck the automobile in which Terrazas was riding at the time of the accident, or with the motorman or conductor operating the street car, or the street railway tracks upon which the street car was running at the time and place of the accident, or with the accident itself causing the death of Terrazas, and that therefore the trial court should have given the requested peremptory charge to find for defendant. It is true, as claimed by appellant, that there is but slight, if any, direct, affirmative evidence in the record as to the ownership by appellant of the street car system in El Paso, or of the management or operation of the car system or the operation by appellant of the particular car that struck the Terrazas automobile, or in any way connecting· appellant with the accident itself. The facts, however, need not be shown by direct affirmative evidence, but, like any other fact, may be shown or established by circumstantial evidence. If the evidence does not establish the facts necessary to appellant's liability, the assignments must be sustained, unless, as claimed by appellee, the court may take judicial notice that appellant possesses and operates the street car system in El Paso. Appellee alleged that on the day of the accident appellant owned, and was then by means of electric power operating, a street railway in the city of El Paso, and was maintaining its track and operating its cars upon and along Alameda avenue. We think it could hardly be said that the fact of ownership of a street railway in El Paso by the appellant, or that appellant was, at the time of the accident, operating a street railway in the city, or that the appellant owned or was operating the particular line of street railway on Alameda avenue, are matters of which a court can take judicial notice. Besides, it is not merely a question of ownership, operation, or control of the street car system in the city of El Paso; it is as necessary to prove that appellant did the injury as it is to prove the injury itself. Appellant's connection with, and responsibility for, the injury is established by showing that it was operating and controlling the movement of the car on Alameda avenue at the time of the accident. The Kansas City Court of Appeals, in a case very similar to this in some respects, said:

"We cannot take judicial knowledge of the fact, if it be a fact, that the 'Argentine Line' belongs to the 'Metropolitan System,' where the answer of the respondents admitted that the receivers were in charge of certain lines of railway, the Argentine not being one specified." George Muehlebach Brewing Co. v. Dunham (Mo. App.) 177 S. W. 1067; Frisby v. St. Louis Transit Co., 214 Mo. 567, 113 S. W. 1059; Reisenleiter v. United Railways Co., 155 Mo. App. 89, 134 S. W. 11.

The rule is stated as follows\in 17 Ency. of Pleading & Practice, p. 598:

"The evidence should support the allegations as to ownership and operation of the train and road at the time of the injury, and should show the defendant and not another company to be liable."

Ownership, management, or control of the particular car that caused the injury was certainly an issuable fact in the case and requires proof.

[4] Does the evidence support the allegation? There is but slight, if any, direct evidence that the El Paso Electric Railway Company owns or was operating the system of street railway lines of which the line on Alameda avenue was a part, or that it owned or was operating the particular car that came in contact with the Terrazas automobile on Alameda avenue. From the record we quote the expressions having reference to the issue of ownership, operation, and control. Ross Watson, a witness for appellant, said:

"My expenses down here [witness coming from New Mexico] are paid by the street car company. * * * I was under subpœna to come here."

Alvis Dixon, a witness for defendant, testified that he was claim agent for appellant; had been claim agent for appellant for seven or eight years; that he made an examination of the ground where this accident occurred immediately after the accident, and several times after that, and took pictures down there showing the situation; made quite a number of measurements at the time of the accident or right after it; made extended statement as to the measurements taken; took photographs of Latta street and made statements as to same; made an effort to locate Ramon Barrow, the conductor on the car, at the time of the accident, in order to take his deposition; said, "I first inquired of his [the motorman's] father, who·was then and still is motorman with the company;" said the motorman was in the navy, and witness had written to the Secretary of the Navy and to Mare Island Navy Yard in efforts to locate him; further said:

"I have been in other employments with the street car company except in the capacity in which I am now employed. I have been in the lighting department, contract agent for them, solicitor for them, electric light department, and motorman. I was motorman for this company here in El Paso when I first began working for the company about fourteen years ago. I was motorman several months. * * * I have been claim agent for the El Paso Electric Railway Company about eight years. * * * I have had experience in operating cars similar to the car involved in this accident."

The witness then testified at much length as to the method used in stopping the cars, and the distances under which they could be stopped under different circumstances. The photographs taken by witness Dixon and a small map or diagram, the measurements of which were checked by the witness, showing distances, etc., at intersection of Latta and Alameda streets, were introduced in evidence by appellant.

Charles A. Brann testified as a witness for appellant. He said in part:

"I am assistant claim agent for the El Paso Electric Railway Company, and have been in that employ for three years."

Witness then testified as to some observation he had made as to distances one could see from certain points and measurements he had made on the ground. He further testified:

"Mr. McNaughton is employed by the El Paso Electric Railway Company as clerk to the superintendent of light and power. He is here in the courthouse."

Mr. McNaughton testified as a witness for appellant. He said in part:

"I have worked for the street car company about two years. I am in the employ of the company now. * * *"

Then made statements as to distances and measurements he had made with reference to the intersection of Latta street and Alameda avenue and objects that could be seen from places stated.

Shockley testified as a witness for appellant. After speaking of his experience as motorman elsewhere, he said:

"I started here the 7th of last December a year ago. * * * I recall an accident which occurred at or near the corner of Latta and Alameda avenue in this city along in January of last year in which a man named Terrazas was killed. I was running the car that came in that collision. I was motorman on that car."

Then testified at length as to the circumstances of the accident. He further said:

"I came here on December 7, 1916, and worked for the street car company. * * * I went to work for the company the day following arriving here. * * * I had been running on the Washington Park run ever since I had been here."

While the evidence is slight as to appellant's connection with the ownership, operation, or control of the street car that came in contact with the automobile, we have concluded that the evidence, taken in connection with all of the facts and circumstances bearing upon the issue, is sufficient to support the jury's finding that Terrazas was killed in a collision occurring at the intersection of Latta and Alameda streets between the automobile he was driving and a street car of appellant.

[5-7] Appellant requested the court to charge the jury that the undisputed evidence shows that Terrazas was guilty of negligence causing, or contributing to cause, the collision, and therefore to return a verdict for appellant; the refusal to so charge the jury is made the basis of the third assignment. We think the evidence is not undisputed, as claimed. Quite a number of witnesses testified as to the circumstances surrounding the collision. The evidence conflicts as to what occurred, but under the evidence the issue of negligence vel non was one for the jury. See Antonio Traction Co., v. Levyson et al., 52 Tex. Civ. App. 122, 113 S. W. 569, and the cases there cited. As said by Judge Neill in that case, if it be conceded, as contended, the deceased stepped immediately in front of a moving car, it does not necessarily follow that he was guilty of negligence per se. This depends upon the attending facts and circumstances. G., H. & S. A. Ry. Co. v. Conuteson, 51 Tex. Civ. App. 1, 111 S. W. 188; Texarkana & Ft. S. Ry. v. Frugia, 43 Tex. Civ. App. 48, 95 S. W. 565. Appellant refers us to I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, Baker v. Collins, 199 S. W. 519, Ft. W. & D. C. Ry. Co. v. Hart, 178 S. W. 795, M., K. & T. Ry. Co. v. Trochta, 181 S. W. 761, and other similar cases, in which the general rule is stated to be, and applied to the facts in those cases, that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety, and that he cannot excuse the absence of all care on his part by showing that those in charge of a train have also been guilty of negligence. Here the evidence does not show the total absence of all care on the part of Terrazas. The witness Cook testified that he saw the accident. Said he saw the automobile coming on the far side (north side) from where he lived;

"saw him (Terrazas) put his hand out and make a slow, easy turn; just about the time he turned I saw the street car crossing the street hit him right in the middle. The man in the automobile (Terrazas) was almost against the curb on the far side of the street from where I was, and just put his hand out, and made a nice, easy turn, a wide turn, as if going across the track at Latta street in a southerly direction. * * * I saw the collision and saw the effect of it. The car was struck on the cross-

ing: * * * I judge he was moved about sixty feet—anywhere from sixty to ninety feet."

The witnesses made it clear that, for some distance before the accident at Latta street, the street car and the automobile were both going west on Alameda avenue, and for some distance before reaching Latta street, according to some of the witnesses, the two were running somewhat side by side and going at about the same speed.

Witnesss Watson said:

"Each one was going about 18 miles an hour; the jitney was going faster than the street car and turned right in front of them."

Shockley, the motorman, said:

"I first saw the jitney that was being operated by Mr. Terrazas when I came on to Alameda coming out from the park. * * * I then continued on my way. The jitney left about the same time I left Alameda. Just opposite me we went side by side until we got to Latta street; he passed, leading me five or ten feet. I was running seventeen or eighteen miles an hour; I had not made a stop since I left there. The jitney was running alongside of me, right opposite my car, until we got near Latta street, where he led me five or ten feet possibly."

In San Antonio Traction Co. v. Levyson, supra, and in which a writ of error was denied, it is said the law is more favorable to one going upon a street railway in front of a moving car than it is to one who steps in front of a steam engine. In the former case the rights and duties of the parties are reciprocal. In the latter the right of the railroad to use its track is ex necessitate superior to the individual, and, if he interferes with this right by going on a railway track in front of a moving train, he ordinarily becomes a trespasser and guilty of negligence as a matter of law. But the court in that case does not apply the same rule to street cars, because ordinarily they are maintained in streets of cities which are intended for, and used by, the general public, which use is not subordinate to the use of a street car company. The two rules are not in conflict.

Appellant requested the court to instruct the jury that the undisputed evidence shows that Terrazas drove in front of a street car approaching at a speed of not less than 17 miles per hour, and was struck by the street car just about the time he went upon the track, or after he had reached about the middle of the track in front of the approaching car, and that his driving upon said track was a proximate cause of the collision and injury to Terrazas. The refusal to give the charge is the ground of the fourth assignment. The court was not in error in refusing to give the requested charge. The charge was, in effect, a peremptory charge. It virtually said to the jury that the law is that if one drives in front of a street car approaching at a high rate of speed, and is thereby injured, he cannot recover, and that regardless of every other fact or issue in the case. The issue was clearly one for the jury under the authorities cited in considering the last preceding assignment. The evidence is conflicting as to the circumstances under which Terrazas undertook to cross the track. The result and the evidence show that the street car was running at a rapid rate of speed, and could not have been a great distance away when Terrazas undertook to cross over. He necessarily undertook to cross in front of the car. He may not have known that the car was running at such high rate of speed or was not so near to the crossing. He may have presumed that the car was under complete control of the motorman at the Latta street crossing and that the motorman could see that he was in the act of crossing in front of the car. The rights and duties of the street car company and Terrazas were reciprocal. One witness said Terrazas' automobile came to a complete standstill before he undertook to cross over in order to let an east-going street car pass, and that Terrazas did not see the approaching street car. Cook said he held out his hand, indicating that he was in the act of crossing. Shockley, the motorman, referring to Terrazas, said:

"I saw him from the time he left out there at that little restaurant on Alameda running alongside of me. * * * I was looking out for this jitney and anything else that might turn up in front."

He denied that Terrazas slowed down and made a wide turn, and put his left hand outside of the car, as stated by Cook. The requested charge would have been on the weight of the evidence, as determining that going upon the track under all the circumstances was negligence, was the producing cause of the injury, and that in doing so Terrazas could reasonably have anticipated the resultant injury.

[8] The fifth assignment is based on the court's refusal to give a special charge. The charge was incomplete in that it did not designate what question the jury should answer "No" in the event they should find the facts as stated.

[9] The sixth assignment claims error in the court's refusal to give the following special charge:

"Gentlemen of the Jury: Was the deceased, Arnulfo Terrazas, guilty of negligence in driving upon the street car track on Latta street in front of the approaching street car? Answer 'Yes' or 'No.' In this connection, you are instructed that if you believe from the evidence that the deceased, Arnulfo Terrazas, went upon the street car track in front of said approaching street car, either with his curtains on his left side of his automobile in place, obscuring his view, or without said curtains, and that he failed to look or listen for said street car, or failed to keep a proper lookout for his own safety, and that in driving upon said tracks in front of the approaching street car, under all the surrounding facts and circumstances, was

negligence on his part, then and in that event you will answer the above question 'Yes.' "

The court was not in error in refusing to give the requested charge. The court in the general charge, and in special charges not quoted above, had submitted to the jury all facts pleaded as constituting negligence on the part of the deceased. Appellant had not pleaded as an act of negligence that deceased had failed to look or listen for the approaching street car, or had failed to keep a proper lookout for his own safety, nor had appellant pleaded the group of facts embraced in the requested charge as constituting negligence on the part of deceased. The evidence does not show, except inferentially, whether deceased looked or listened for the approaching street car. We have found no facts either alleged or proved, to which the portion of the requested charge, "or to keep a proper lookout for his own safety," could apply. Appellant refers us to M., K. & T. Ry. Co. et al. v. McGlamory, 89 Tex. 635, 35 S. W. 1058. In that case appellant had pleaded that at the time of his injury plaintiff was in a state of voluntary intoxication which proximately contributed to his injury. There was evidence tending to support the plea. While the court told the jury that voluntary intoxication furnishes no excuse for failure to exercise the same degree of care for his own safety that is required of a sober person, the court had not submitted the issue of fact pleaded, nor as said by Judge Denman in the opinion:

"The charge of the court nowhere undertakes to apply the law to the evidence adduced in support of said special plea of contributory negligence."

The requested charge in the case referred to properly submitted the issue pleaded. The holding of the Supreme Court in the case was to the effect that the defendants were entitled to a charge requiring the jury to find whether the evidence established the existence of the specified fact, or group of facts, to be established, which if true would in law establish such plea, and instructing them if they found such group of facts to be established by the evidence, to find for defendants. The court instructed the jury that the degree of care required of deceased in crossing a street car track at street intersections was the use of ordinary care to avoid being injured by a street car, and that a failure to use such care was negligence, and defined "ordinary care" to be that degree of care exercised by a person of ordinary prudence under the same or similar circumstances. In Mo. Pac. Ry. Co. v. Lee, 70 Tex. 501, 7 S. W. 857, a personal injury case resulting in death, and in which the court charged the degree of care required of the deceased in crossing the track similar to the charge here, and in which the defendant company asked instructions to the effect that it was the duty of deceased to make use of his sense of sight and hearing to

discover the approaching train, and that if injured by reason of failing to look when, by looking before driving upon the track he could have seen the approaching train, recovery could not be had, the Supreme Court said our courts have refused to recognize as a duty of the trial judge to attempt to define duties neglect of which would be negligence, in the absence of statutory definition of duties, a disregard of which is negligence as matter of law. The court further said what is due care under a given group of facts must be determined by the jury by applying the rules as to what, in their judgment, a man of ordinary prudence would have done under the attendant circumstances. The case having been submitted on special issues, the requested charge, even applicable to the pleading and evidence, would have been confusing to the jury.

[10-13] A city ordinance provides that it shall be unlawful for any person to drive upon any public street any vehicle that is so covered as to obstruct or obscure the view of the driver thereof of the street behind such vehicle, unless there is attached to such vehicle a mirror of such kind and so placed that the driver may see therein the reflection of the street for a distance of at least 200 feet behind such vehicle. Appellant pleaded the failure of the deceased to observe the provision of the ordinance. The court had not in the general charge submitted the issue of the deceased's failure to observe the ordinance. Appellant submitted a proper special charge instructing the jury on the issue of the failure to equip the automobile with the mirror, assuming that the evidence necessitated the giving of the charge.

The refusal to give the special charge is complained of in the seventh assignment. After the evidence had been closed, and while the charge of the court was still in course of preparation, and before the jury had been instructed, counsel for appellant requested the court to permit them to recall witness Shockley, and to show by him and others, as they could and would, that the automobile driven by deceased was not equipped with a mirror, and that the failure to earlier make such proof was due entirely to oversight on their part, they having intended to make such proof, and were under the impression that they had done so until their attention was called to the fact such proof had not been made. The court permitted the recall of witness Shockley to show other facts, but refused permission to show by Shockley or other witnesses that the automobile was not equipped with the mirror. The refusal to permit appellant on the recall of Shockley to the stand, to show that the automobile was not equipped with the mirror, is complained of in the eighth assignment.

Conceding the validity and the application of the city ordinance pleaded, it constituted a law within the limits of the city of El Paso,

its violation by the deceased, Terrazas, would constitute negligence per se, and it would become the duty of the court to so charge. Texas & Pacific Ry. Co. v. Brown, 11 Tex. Civ. App. 503, 33 S. W. 146, and cases there cited. It could hardly be claimed that it was error to refuse to give the special charge in the absence of evidence necessary to make the failure to observe the ordinance available as a defense. Appellant offered to prove on recall of the witnesses only that the automobile was not equipped with the mirror. In our judgment such was not sufficient. The ordinance could have application only within the corporate limits of the city of El Paso. There was no satisfactory evidence that the intersection of Latta street and Alameda avenue is within the corporate limits of the city, and the court could not judicially know that it was. There are some vague expressions of witnesses as to residence and business in the vicinity of place of the accident as being in El Paso, but there is no satisfactory evidence that the place of the accident is within the corporate limits of the city. Conceding, however, that the intersection of Latta and Alameda sreets is in the city, and that the ordinance has application at that point, the evidence is almost wholly wanting as to the covering of the automobile, so as to obstruct or obscure the view of Terrazas of the street behind the automobile, and thereby make the ordinance applicable. Appellant does not in its brief point out the evidence referring to the covering on the vehicle, and we have searched in vain for evidence which sufficiently shows that the automobile was so covered as to obstruct or obscure the view of the driver of the automobile. Appellant refers to the statement of only one witness, Cook, and he said, "The curtains were up." Witness Reyna said:

"He (Terrazas) had the curtains up on the car on one side only; the right-hand side. No; I mean the left-hand side. The curtains were on the side next to the street car track. There was no curtain on the right-hand side—the side I was on."

Witness Shockley said:

"The machine was all curtained in on my side. * * * He had curtains on the left-hand side of the car."

The above is all the evidence the record discloses as to car being curtained. The burden was on appellant to show that the automobile was so covered as to obstruct or obscure the view of the driver of the automobile of the street behind the automobile, as it is only when the vehicle is so covered that the ordinance requires the mirror to be attached or used. The evidence not showing the facts which make the use of the mirror necessary, the court was not in error in not permitting appellant to prove that the mirror was not attached to the automobile. Appel-

lant did not offer to make proof of any fact other than that the mirror was not attached.

[14] By the ninth and tenth assignments appellant claims there is such confusion in stating question No. 5 as to make it impossible to gather from the answer made by the jury the finding of the jury to question 5. The court directed that the answer be "Yes" or "No," and it is further claimed that the question is not susceptible of being answered "Yes" or "No." Abbreviated here, the question is:

"Do you find * * * that Terrazas, upon reaching Latta street, did or failed to do any of the following things: (a) Turn to his left and attempt to cross the street car track almost immediately in front of the approaching car? (b) Upon reaching Latta street, suddenly turn to his left and attempt to cross the track in front of the approaching street car, without giving any signal or warning of any character of his intention to so turn across in front of said approaching car?"

To each question the jury gave a separate answer, "No." Appellant in its answer, in alleging acts of negligence on the part of deceased, said he—

"was guilty of negligence causing, or contributing to cause, his death, as follows: (a) * * * Terrazas * * * turned to his left, and attempted to cross the street car tracks, almost immediately in front of the approaching street car. * * * (b) * * * Terrazas, * * * upon reaching Latta street, suddenly turned to the left, and attempted to cross the tracks in front of the said approaching street car without giving any signal or warning of any character of his intention so to do."

The subdivisions of the charge, even as to the use of the letters, correspond with the answer. The answer alleged as negligent acts that deceased did some things and failed to do others—attempted to cross immediately in front of the approaching street car—attempted to cross without giving any signal. Did he do the one or fail to do the other? A special verdict should be sufficiently certain to stand as a final decision of the special matters with which it deals. M., K. & T. Ry. Co. of Texas v. Pace, 184 S. W. 1051, and cases there referred to. The two questions being subdivisions of the same number, we think they can be separately answered, as was done, so as to be intelligible, by "Yes" or "No." Riske et al. v. Rotan Grocery Co., 37 Tex. Civ. App. 494, 84 S. W. 243. But if it cannot be definitely ascertained what was actually found by the jury from the two answers to question 5 alone, we think the answer of the jury to special question No. 12, submitted by appellant, stated above, makes it quite clear, or at least removes any doubt, as to the jury's answers to question No. 5. It is claimed by the eleventh assignment that subdivision (b) of question No. 5 is a double question, and could not be answered by "Yes" or "No," as directed by the

court. We do not think the sense and meaning indicates a double question. The court could have told the jury that the undisputed facts were that Terrazas turned to his left and attempted to cross the track in front of an approaching car, and have submitted only the inquiry, Did he do so without notice? All of the acts submitted in question 5 are pleaded as evidentiary facts to the one result as pleaded, that the facts constitute negligence. But, in our judgment, the ultimate inquiry remained, viz. was he guilty of negligence in so doing? That question was submitted and answered. In so holding we are not in conflict with Gardenhire v. Gardenhire, 172 S. W. 726, to which we are referred.

The twelfth assignment claims error in the submission of the seventh question. It is insisted that, if Terrazas attempted to cross the track immediately in front of the approaching street car, or suddenly turned in front of the approaching street car, his act, in either event, was, of necessity, a proximate cause, or a contributing cause, to his injury, and the submission of the question of proximate cause was error. The question was submitted in event only the jury had answered all or any of the questions in No. 5 in the affirmative. The jury answered no question under 5 in the affirmative, and so made no answer to question 7. Question 7, by the terms of the charge, was withdrawn. The assignment is overruled.

At the request of appellant, the court gave special instructions Nos. 7 and 9, which we need not state at length, each grouping certain facts, and stating to the jury that if they found affirmatively on the facts as stated, and found that the facts constituted negligence on the part of Terrazas, then and in that event should they so find, they were instructed to answer appellant's special instruction No. 12 "Yes."

[15] In the closing argument for the plaintiff, plaintiff's counsel, in discussing special charges 7 and 9, told the jury that though they should find affirmatively on the facts as submitted to them in special charges 7 and 9, before they could find Terrazas guilty of contributory negligence, and answer special question No. 12 "Yes," they must further find that such negligence was a proximate cause of the injury, as proximate cause was submitted in the general charge. Counsel for appellant called the attention of the court to the line of argument, and objected and excepted to it, on the ground that the special charges referred to were proper presentations of the law on the issues contained in them, and did not require of the jury a finding with reference to proximate cause, and because said argument was contradictory of the special charges, and calculated to render them nugatory and destroy their effect. The court declined to correct counsel, and refused to instruct the jury to disregard the argument.

The argument of plaintiff's counsel was not withdrawn by the court or counsel. Appellant in its thirteenth assignment insists that the above constitutes reversible error. Counsel contends that, under the law as it formerly was, instructing the jury after the arguments were closed, a mistake or error in the interpretation of the law by counsel in argument, could be and was thereafter corrected by the court, but that such opportunity is not now afforded, thus making it the imperative duty of the court to prevent and correct a misstatement or misinterpretation by counsel of the charges given, on objection made. Counsel in oral argument and by brief make a plausible presentation of the error assigned. We think, however, that, unless the record indicates otherwise, we must presume that the jury followed and was governed by the charge of the court. The trial court in allowing the bill states that "the argument of Mr. Ware on this point was almost incoherent, and, in the opinion of the court at the time and at this time, the jury was not misled thereby." Counsel in their bill of exceptions do not undertake to state the verbiage of the objectionable argument of counsel, and the district judge having characterized it as being "almost incoherent," in view of rule 62a, and of the discretion confided to a trial judge, unless it is made to appear otherwise it will not be presumed on appeal that a bare remark or argument of counsel, though objectionable, influenced the jury. Proximate cause is ordinarily a question of fact to be reckoned with in personal injury cases, and, the court having defined proximate cause in the definition of terms used in the charge, we assume that the remark or argument of counsel was not willful, and, as suggested by counsel for appellee, possibly had some foundation in law for applying the term to the special charges.

[16, 17] Counsel for appellee in his closing argument used the following language:

"I sometimes pity a street car conductor or motorman that has to testify while in the employ of the company."

Appellant's counsel objected to the remark as not being "competent argument on the evidence." The objection seems not to have been sustained. Continuing his argument, appellee's counsel said to the jury:

"I agree with Mr. Lyons (of counsel for appellant) and Judge Goggin and Mr. Harrington (of counsel for appellant) that they did not willfully hurt this man; but I do say that when they had pushed the automobile in front of the car that they deliberately and willfully backed the car off the automobile, and let the automobile sink down on his body, which added to his pain and suffering, with his expiring breath, and with the last death rattle gurgling in his throat."

Objection was made to the remark on the ground that it was not warranted by the

pleadings or the evidence. The court addressing the jury said:

"Yes, gentlemen of the jury, you will not consider the language of counsel relating to his deliberately backing the car off the automobile."

From bills of exceptions, to which we are referred, there seems to have arisen some controversy as to the admissibility of the evidence of the witness Matias as to what occurred, both as to conversation between witness and the motorman and the movement of the street car after the collision, and while Terrazas was yet alive and under the automobile, and the automobile under the street car. Appellant's argument under this (the fourteenth) assignment assumes and proceeds upon the idea that, after admitting the evidence of witness Matias as to witness' conversation with the motorman as to the movement of the street car, and as to what occurred in the movement of the street car after the collision, the court finally excluded all evidence, both as to the conversation and as to the movement of the car. But we think that view is not sustained by the record as to witness Matias, but it is sustained as to witness Reyna, called to testify after Matias had testified. The record shows that the court excluded, of Matias' evidence, only that portion detailing his conversation with the motorman, but did not, on motion or otherwise, exclude the portion relating to the movement of the street car after the collision. Omitting what we think the court excluded of witness Matias' evidence, he said in part:

"The blow of the street car hitting the automobile called my attention to the accident. * * * When I heard it I ran over there to see what happened, and the automobile was being pushed by the street car to where it got against a post, and there the car turned over and went to one side; it made two turns—that is, the automobile. The automobile was pushed about seventy feet by the street car. I saw the automobile being pushed by the street car all that distance. When I got there the automobile was kind of leaning on the side, and when the street car was moved the automobile fell, and the motor of the automobile hit the man, Mr. Terrazas, on the breast. I saw Mr. Terrazas in the automobile when the street car first stopped before it pulled back. I could see him open his mouth. * * * I could not hear what Mr. Terrazas was saying. He was moving his mouth at the time. I could see one hand he had out of the wind shield, which was broken. The hand was moving. When they moved the street car back the automobile fell over and fell on Mr. Terrazas. I could see Mr. Terrazas prior to that time. I could not see him after the automobile had fallen on him. I saw no movement of him after that time." .

Witness Ortega testified to practically the same facts as Matias. After stating the position of the automobile under the car witness said:

"You could just see the engine of the automobile and the man lying in there. He had his hand, you see, like he could not talk. The way we looked at him with his hand out on the side, we say altogether, 'Let's jerk the automobile to see if he cannot get out.' We jerked the automobile; we could not move it at all. Some say, they thought it was hooked, * * * and then we hear the conductor say: 'Let's move that a little bit back,' and they could not move it at all.' The conductor then made a motion to the motorman to move a little bit, you see, then the motorman put the car in motion; did not move it but a little; moved it too far. As soon as the motorman saw the car turn right over on top of this fellow, then we looked at him."

Hererra, a witness for plaintiff, in answers to questions on cross-examination as to conditions after the accident, said in part:

"Mr. Terrazas was in the wreckage underneath the forepart of the car. I saw one of his hands move. He was still under the car at the time I left."

Witness McKinney said:

"I went there immediately, and found the car was turned upside down, and this party's head and hand was sticking out like this, and they were trying to back the car off the automobile, but could not. When they backed the car the automobile dropped. * * * When they backed the car it seemed like they were crushing him; I don't know whether he was dead or not. Then some one asked him not to kill the man under the car. It appeared that the car fell down on the man. It was turned over, and he was pulled out from under the car."

Edmonson testified:

"I am quite certain that Mr. Terrazas was not dead when I got there. I remained there quite a while. I was going to assist, but after they killed this man they decided not to move this car any more until they got some jacks."

If we have properly interpreted the court's ruling as embraced in bills of exceptions 3 and 4, none of the above-quoted evidence was excluded or asked to be excluded from the jury. It seems to us that the evidence quoted above was admissible, not as proving a new, separate, and distinct ground of negligence not pleaded, but as res gestæ, parts of the one continuous accident. The case was submitted on special issues, and none of the questions submitted had reference to negligence not assigned and to no act or happening occurring subsequent to the coming together of the two vehicles.

The jury could conclude from the evidence that Terrazas was alive until the street car was moved, whether necessarily moved or not, and the automobile let down on him. We have considered and stated the quoted evidence in determining the questions raised in the assignment, Were the remarks of the attorney outside the evidence? The street car evidently had pushed the automobile in front of the street car. The quoted evidence shows that the motorman undertook to back the street car off the automobile, and that the automobile did then sink down on the

body of Terrazas. If the motorman did did in fact back the street car, he did it deliberately—that is, "with careful ˙ consideration"; he backed the car willfully—that is, having in mind the purpose to remove the car from off the automobile, not necessarily stubbornly or governed by the will without regard to reason. The verbiage of the remark exculpates the motorman from purposely causing the accident. The remark of counsel does not accuse the motorman of deliberately and willfully causing pain and suffering to Terrazas in his last moments, as is claimed by counsel for appellant, but the words "deliberately and willfully" are applied to the act of backing the street car to detach it from the automobile. We can well imagine that, if Terrazas was not dead when the automobile was let down on him, it caused additional pain and suffering, and the evidence is that he was dead immediately thereafter. It· is. true there is no direct evidence that at the time the automobile was let down on Terrazas the last death rattle was gurgling in his throat. But is it not a fair deduction from the evidence? We have concluded that the remark of counsel is not necessarily outside the evidence. But the trial judge, impressed, no doubt, with the thought that possibly the remark was stronger than the facts would justify, told the jury not to consider the language of counsel relating to the motorman deliberately backing the car off the automobile.

[18] Space forbids a review of the cases to which we are referred. We must presume that the jurors who tried the case were competent to understand and willing to obey the instruction of the court as to what they shall and shall not consider in determining· their verdict. ˋAs a general rule, a withdrawal of any objectionable remarks either by the attorney making them or a direction by the court to disregard them is deemed to have removed any prejudice caused and cured the error, so that a reversal will not be had therefor. However, the rule is qualified to the effect that the error will be deemed to be cured unless injury is shown to have resulted; thus implying that a reversal might be had notwithstanding the withdrawal, if injury is shown to have resulted. Such seems to be the rule in criminal cases, and it certainly is not more rigid in civil cases. McGill v. State, 25 Tex. App. 499, 8 S. W. 661.; Dudley v. State, 40 Tex. Cr. R. 31, 48 S. W. 179. If the evidence warranted the finding that appellant was guilty of the negligent acts complained of, we could not say that the remarks of counsel influenced the findings. We could look only to the amount of the damages assessed. What we have said in, discussing assignment 12 applies to assignment 15.

[19] By assignment 16 appellant claims

error in entering judgment upon the verdict because grossly excessive. Terrazas was 41 years old, had been married 17 years, had a wife and six minor children, four girls and two boys, ranging in age from 15 to 2½ years old. He was in good health; worked all the time; never drank; provided for the support of his family. He formerly lived in the state of Chihuahua, Mexico, ·where he was manager of a hacienda for Gen. Terrazas, and was driven out of Mexico on account of the revolution. He had been a broker, storekeeper, and owned jitneys. Had chauffeurs for his jitneys, but on the day of the accident was operating one of his cars. His earnings for some years had run from $1,500 to $2,500 a year. We think the verdict is not excessive.

Finding no reversible error, the judgment is affirmed.

⊜⌾For ·other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error denied by Supreme Court March 19, ‑1919.